THE STATE OF MISSOURI, Respondent, *v.* WARREN F. McCHESNEY, Appellant.

### November 11, 1884.

1. INDICTMENT — FALSE PRETENCES. — An indictment which charges that the defendant, by a trick, attempted to obtain "from certain persons, firms, and corporations then and there composing a voluntary association called the Brewers' Association of St. Louis, a more particular description of which is to the jurors unknown," a large sum of money, sufficiently identifies the parties and ;the transaction to satisfy the rule of pleading.

2. PRACTICE — WITNESSES. — That one of the two prosecuting witnesses named on the back of the indictment has no real existence does not invalidate, the indictment.

3. —— EVIDENCE — PRIVILEGED COMMUNICATIONS. — Statements made in a consultation with counsel while seeking legal advice as to a prospective violation of the law, are not privileged, and the attorney may be compelled to testify with reference thereto.

4. CONSTITUTIONAL LAW. — The statutory provision as to obtaining money under false pretences is valid.

5. PRACTICE. — Objections that the prosecuting attorney was unfair in his closing address to the jury will not be considered on appeal unless objection thereto was made at the trial.

APPEAL from the St. Louis Criminal Court, VAN WAGONER, J.

*Affirmed.*

L. B. VALIANT, for the appellant: The indictment charges no crime; it does not sufficiently inform the defendant of the nature of the offense of which he is accused. It is an attempt at an indictment under section 1561, Revised Statutes 1879, but complies neither with the rules of criminal pleading at common law nor the requirements of that statute. — *The State* v. *Helm*, 6 Mo. 263; *The State* v. *Ross*, 25 Mo. 426; *The State* v. *Evers*, 49 Mo. 542. If it were permitted, in the use of this statutory form, to omit the names of the persons attempted to be defrauded on the ground that they were unknown, then the indictment should state that the

names were unknown ; and that is an issuable fact so important that, if untrue, the prosecution must fail at the trial. — Archb. Crim. Pl. & Pr. 245, *et seq.;* Whart. Cr. Law (5th ed.), sects. 250, 251 ; 1 Bishop's Cr. Proc., (1st ed.) sect. 297. In all the cases in which indictments have been held to be sufficient under this statute, the names of the persons alleged to have been defrauded are given. — *Morton* v. *The People,* 47 Ill. 468 ; *The State* v. *Fencher,* 71 Mo. 460; *The State* v. *Porter,* 75 Mo. 171; *The State* v. *Norton,* 76 Mo. 180. The statute requires that " when an indictment is found by the grand jury the names of all the material witnesses must be indorsed on the indictment." — Rev. Stats. 1879, sect. 1802, p. 304. Communications between attorney and client are privileged. — *Cross* v. *Riggin,* 50 Mo. 335.

Thomas B. Harvey, Joseph G. Lodge, William H. Bliss, and Henry T. Kent, for the respondent: The indictment is sufficient. — *The State* v. *Fancher,* 71 Mo. 460 ; *The State* v. *Williams,* 77 Mo. 310. The purpose of requiring the name, whether of the defendant or of a third person, is identification. — 1 Bish. Cr. Proc. 677 ; 7 Ired. 27. In stating intent to defraud, it is sufficient to describe the party intended to be defrauded with reasonable certainty. — 2 Russ. on Cr. 367 ; *Lowell's Case,* 2 East's P. C. 990, sect. 60 ; *Noakes* v. *The People,* 25 N. Y. 386 ; *Fisher* v. *The State,* 4 N. J. L. 169 ; *Vandermark* v. *The People,* 47 Ill. 122; *The State* v. *Black,* 31 Texas, 560. Communications between attorney and client are not privileged when the client is seeking advice as to prospective infractions of the law. — Weeks on Attorneys, sect. 166 ; Whart. Cr. Ev., sect. 504; *Gartside* v. *Outram,* 26 L. J. Ch. 113, 114.

Lewis, P. J., delivered the opinion of the court.

The case, with a few unimportant omissions, is fairly stated by the appellant as follows :—

" The indictment charges that the defendant, on the 13th of September, 1883, in the city of St. Louis, ' did, with intent, then and there, to feloniously cheat and defraud, unlawfully and feloniously attempt to obtain from certain persons, firms, and corporations, then and there composing a voluntary association known as the Brewers' Association of St. Louis and East St. Louis, a more particular description of which said persons, firms, and corporations, and of said association, is to the jurors aforesaid unknown, by means and by use of a certain trick and deception, and by means and by use of certain false and fraudulent representations, statements, and pretences, a large sum of money ; that is to say : the sum of two thousand dollars, then and there the money and property of said association, contrary," etc.

Indorsed : " A true bill : Thomas Richeson, foreman. Witnesses : Jas. C. McGinnis, Robt. Wilson."

Defendant demurred to the indictment on the grounds : —

" 1. That said indictment does not state facts sufficient to constitute a crime, or charge the defendant with the commission of acts which constitute a crime against the laws of this state, in this, to wit : said indictment does not set forth the act or acts constituting the alleged trick and deception, and does not state in what the alleged fraud and fraudulent representations, statements and pretences consisted, or of what acts or conduct the defendant is charged, as constituting such alleged trick and deception, false and fraudulent representations, statements, and pretences ; neither does it state the name or names of the person, or persons, or corporations defrauded, or attempted to be defrauded ; neither does it state that the name or names of such person, or persons and corporations, defrauded, or attempted to be defrauded, or that the person, or persons and corporations, defrauded, or attempted to be defrauded, were unknown to the grand jury."

" 2. The indictment neither states facts descriptive of the offence, as the rules of the common law and general crim-

inal pleading require, nor does it give the names of the persons defrauded, as the form prescribed by the statute requires.

" The demurrer was overruled and afterwards the dedefendant filed a plea in abatement, as follows : —

" Now comes the defendant, and for his plea in abatement herein, says that he ought not to be required to answer said indictment, because, he says, that in relation thereto, the state has practiced and is practicing towards him a trick and deception, in this, to wit : that, instead of indorsing on said indictment the names of all the material witnesses, as the law directs, the state has indorsed thereon a fictitious name, to wit : Robert Wilson, in lieu of the real name of a witness whose name is to this defendant unknown, with the intent to deceive and mislead the defendant, and deprive him of the fair notice, which the statute in such case made and provided, requires to be given him, and this he is ready to verify. Wherefore, defendant prays judgment if he should be required to further answer said indictment."

3. " This plea was duly verified by the affidavit of the defendant.

" The state demurred to the plea and the court sustained the demurrer.

" On the trial, the state introduced evidence tending to prove that in August, 1883, when there was great public interest shown on the subject of enforcing the Sunday feature of the dramshop law of 1883, the question arose as to whether or not the act of 1883 repealed the act of 1857, which authorizes cities, in the county of St. Louis, to license beer saloons to keep open on Sunday, when thereto authorized by a vote of the people of the city. That this was a question in which the Brewers' Association, which was a voluntary association, composed of all the brewers but one in the city, was greatly interested, and members of the association were being prosecuted in the court of

criminal correction for selling beer on Sunday, and Mr. J. C. McGinnis was their attorney. That, in this emergency, defendant sent for one Zach. J. Mitchell, an attorney who was in the employ of the Saloon-keepers' Association, of St. Louis County, and gave Mitchell to understand that he, defendant, was in the employ of the Brewers' Association, and desired to consult with him, Mitchell, professionally on this question. The result was, Mitchell unfolded to defendant a plan by which the question could quickly be carried to the supreme court, which was this, to-wit: a proposition was already on foot in the city of St. Ferdinand, or Florissant, to petition the city council of that city to order an election under the provisions of the act of 1857; if the council should order the election, an application to the supreme court would lie for a *quo warranto;* if the council should refuse to order the election, an application for a *mandamus* would lie to compel them to do so; thus the naked question of the validity of the act of 1857 could be brought directly to the supreme court. Mitchell was willing to undertake the suit for a fee of $1,000; McChesney was to submit the matter to the gentlemen whom he professed to represent (but whose names he did not give, but who, he gave Mitchell to understand, were connected with the Brewers' Association, but did not wish to be known), and ascertain if they would be willing to incur the expense, and employ counsel to carry this question in this way to the supreme court. That this was a subject of discussion between defendant and Mitchell, at intervals, for several weeks, but nothing was settled, and in the meantime the test case in the court of criminal correction was decided in favor of the brewers; that after that decision defendant went to the attorney for the brewers, McGinnis, and told him that a movement was on foot in the city of St. Ferdinand, or Florissant, by the prohibitionists, to petition the city council to order an election under this law of 1857, which the council was to refuse, and then a *mandamus* was

to be applied for, which would bring the question to the supreme court; and that defendant suggested that the movement ought to be stopped, and said that he had been out to Florissant and seen 'those people out there' (by which expression the witness understood he meant the city council of St. Ferdinand, although he did not say who he meant), and that the thing could be stopped for $2,000, which he thought the brewers ought to pay; that of this $2,000 part was to be paid to 'those people out there,' and part to certain parties, not named, in the city of St. Louis; that McGinnis refused to submit the proposition to the Brewers' Association, but, at defendant's request gave him the names of the officers of the Brewers' Association, saying, that if he desired to do so, he could submit the proposition to them himself. McGinnis did not submit the proposition to the Brewers' Association, but mentioned it to some of the members of the association, and afterwards was summoned before the grand jury and gave his evidence in this case.

"That on the 29th of September, 1883, a petition of citizens was presented to the city council of St. Ferdinand, for an election to be held under the law of 1857, which was granted by the council; the election was ordered and held, 15th of October, 1883, and resulted in favor of keeping the beer saloons open on Sunday."

To this statement should be added some other facts which the testimony on the part of the state tended to prove, viz.: That there had never been any communication whatever between the defendant and the city authorities, or any of them, of the city of St. Ferdinand having any reference to the subject-matter of his several conversations with McGinnis and Mitchell, nor had those city officers ever heard of or discussed any proposition for so shaping their action in relation to the act of 1857, as to make a case for determination by the supreme court. That the defendant, in one of his conversations with McGinnis, promised to go

out to St. Ferdinand on the following day and ascertain with more certainty what was on foot in the premises, and, in a subsequent conversation with the same witness, told him that he had visited those city officers, and learned from them that the contemplated proceedings would be stopped for a consideration of $2,000, to be paid to them and others, through the defendant. That the defendant had no direct communication with the Brewers' Association or its officers, and was never authorized to represent them in any way.

The defendant testified in his own behalf. As to this it is sufficient to say that his account of the matter, if true, was consistent with the most upright intentions on his part, and would have established a complete defence against any criminal charge, as exhibited in the indictment. But in just so far as his story, and the particulars detailed by him, tended in this direction, including his account of conversations with the witness — they were flatly contradicted by the witnesses on the part of the prosecution. The jury could not possibly believe both sides of this conflicting testimony. It is manifest from the verdict that they believed the state's witnesses, and did not believe the defendant. It is too well settled for discussion here, that, in such cases, an appellate court has no authority to interfere with the verdict. The jury found the defendant guilty, as charged, and assessed his punishment at two years' confinement in the penitentiary. We are asked to hold that the demurrer to the indictment should have been sustained. It seems to be admitted that under Revised Statutes (sect. 1561), and its interpretation in *The State* v. *Fancher* (71 Mo. 460), the description of the offence is sufficient, and would uphold the indictment but for the omission of the name or names of the intended victim or victims of the false pretences and representations. We are unable to perceive that there is any fatal omission in this particular. The indictment specifies " certain persons, firms, and corporations, then and there composing a

voluntary association known as the Brewers' Association of St. Louis and East St. Louis, a more particular description of said persons, firms, and corporations and of said association, is to the jurors aforesaid unknown," etc. "The rigid rule of the common law is not required in naming an injured party whose name is used in indictments, as in the case of defendants." *The State* v. *Black*, 31 Texas, 560 ; *The State* v. *Seeley*, 30 Ark. 162 ; *The State* v. *Brite*, 73. N. C. 26. In *The State* v. *Angel* ( 7 Ired. 27 ), it is explained that " the object of setting out the name of the person injured is to identify the particular fact or transaction on which the indictment has been founded, so that the accused may have the benefit of an acquittal or conviction if accused a second time. The name is generally required as the best mode of describing the person, but he may be described otherwise, as by his calling or the like ; if he be identified thereby as the individual, and distinguished from all others, and if the name be not known, the fact may be stated as an excuse for omitting it altogether." It is true that in the Missouri cases and others cited for the appellant the full names of the persons injured are given, and this fact is generally referred to as satisfying the demand for such an identification of the act constituting the crime, as will protect the accused against another prosecution for the same offense. But we do not find it anywhere declared that the name is the essential and only admissible means to be used for such an identification. The descriptive term " Brewers' Association of St. Louis and East St. Louis," is declared to be that by which certain firms, persons, and corporations are known in their collective capacity. If they are so known, as to which there is no dispute, there can be no possible difficulty in identifying the present charge with any future accusation of a like nature, affecting the same persons, whether described by the name of the association, or the baptismal and surnames of the individuals composing it. We think there is here a satisfactory compliance with all

the requirements of criminal pleading in this particular, and the defendant has no substantial ground of complaint. The defendant insists that the demurrer to his plea in abatement ought to have been overruled.    The statute upon which he relies (Rev. Stats., sect. 1802) reads thus : " When an indictment is found by the grand jury the names of all the material witnesses must be indorsed upon the indictment ; other witnesses may be subpœnaed or sworn by the state, but no continuance shall be granted to the state on account of the absence of any witness whose name is not thus indorsed on the indictment, unless upon the affidavit of the prosecuting attorney showing good cause for such continuance." The provision is clearly directory only, and, in undertaking to define the specific consequences of a failure to obey it as to any witness, it compels an interpretation which will attach no more serious consequences to such a failure than those which are so defined. The statute is not to be understood as invalidating an indictment because the names of all the witnesses may not be indorsed upon it. This distinctly appears from the express permission given to examine witnesses whose names are not so indorsed.    With quite as little reason could it be construed as compelling an examination by the state of every witness whose name may appear upon the indictment. If these propositions be correct, how can it be supposed that a defendant may be injured by the state's omission to examine any one or more of such witnesses?    And how, in such an event, can he be injured any more by the fact that the witness whose name appears to be indorsed on the indictment has no real existence?

Whatever may have been the motives of the prosecuting officer in indorsing a fictitious name, if such was the fact, upon the indictment, we are wholly at a loss to understand in what way the rights of the defendant could possibly be prejudiced thereby. We think the demurrer to the plea in abatement was properly sustained.

It is objected that the court erred in permitting Mr. Mitchell to testify against the defendant's objections, in view of the relations which existed between the two, as attorney and client. The question of fact, as to the existence of such relations was decided by the court adversely to the defendant. We fail to perceive that this conclusion was not warranted by the evidence. The rule exists for the protection of litigants, actual or intending, who find it necessary to make full and confidential revelations to counsel learned in the law, in order to an assured ascertainment of their legal rights. It does not clearly appear that the defendant ever pretended to any thing of this sort in his interviews with Mitchell. He professed to be talking not for himself, but for the Brewers' Association. It may be claimed that a party who consults an attorney through an agent is entitled to the same protection against disclosures that would be assured to him if he consulted the attorney in person. But the Brewers' Association here claimed no such protection, and the defendant could not claim it for them. There is, however, another rule which would seem to justify the action of the trial court. "The privilege does not shield parties seeking for advice as to prospective * * * infractions of the law." Whart. Cr. Ev., sect. 504. This rule, it is true, is usually applied only where the party dicloses to the attorney his criminal purpose. But it is held that while a mere charge of criminal intent is insufficient to let in the communications, the court may properly look into the circumstances of each case, with a view to determining the *bona fides* of the alleged consultation with a professional adviser. *Crisp* v. *Platel*, 8 Beav. 62. The whole tendency of the state's testimony in the present case, was to the general effect that the defendant's consultations with Mitchell were held with a view of expediting his designs in the matter charged in the indictment. Under all the circumstances we can not say that the trial court abused its discretion or denied any right of the defendant's

in admitting the testimony objected to in this connection.

The defendant claims that the court erroneously failed to instruct the jury what acts were necessary or sufficient to constitute a false pretense within the meaning of the law. The statute, after defining the offence under consideration, says : " In every indictment under this section it shall be deemed and held a sufficient description of the offence to charge that the accused did on ————, unlawfully and feloniously obtain or attempt to obtain (as the case may be) from A B (here insert the name of the person defrauded) his or her money or property by means and by use of a cheat, or fraud, or trick, or deception, or false and fraudulent representation or statement, or false pretence, or confidence game, or false and bogus check or instrument, or coin or metal, as the case may be, contrary to the form of the statutes," etc. Rev. Stats., sect. 1561. The constitutionality of this provision has been sustained both in this state and in Illinois, whence it was copied into our Revised Statutes, and can not now be questioned as depriving the accused of all the information to which he is entitled or any part thereof touching the nature of the offence charged against him. *The State* v. *Fancher*, 71 Mo. 460 ; *Morton* v. *The People*, 47 Ill. 486. We are not aware of any rule which makes it necessary to define more fully for the comprehension of the jury, the nature of the offence or of the means by which it may be perpetrated. The terms " false pretence " and " false representation " have no technical meaning different from that of their common daily acceptation, wherever they are used by persons who speak our language. No instruction from the court could present their meaning any more clearly than it must be perceived by men of sufficient intelligence to occupy a jury-box, in the import of the words themselves. There was no error on this point. The court instructed : " Defendant is a competent witness in his own behalf in the trial of this case, but the

fact that he is the defendant on trial, and the interest he has at stake may be taken into consideration by the jury for the purpose of affecting his credibility." There was no error in this instruction. It simply gave practical and proper effect to the statute (Rev. Stats., sect. 1918), which provides that "no person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination; or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness." It could not have been wrong to inform the jury of the effect of a statutory provision especially applicable to the matter in hand and expressly adapted to their guidance. This was not commenting on the weight of particular facts in evidence, as in the cases to which we are referred by the appellant.

The defendant claims that counsel for the prosecution, in his closing argument to the jury, used language which was unfair and prejudicial to the rights of the accused. It does not appear from the record that any objection was made at the time, or that the attention of the trial court was in any way called to the matter before the filing of the motion for a new trial. We have again and again declared that, in such a state of record, the objection can not be considered in this court. We may add, however, that in the report of the remarks complained of, we find nothing which violates any rule of inhibition in that relation, with which we are acquainted. *Roeder* v. *Studt*, 12 Mo. App. 566.

We have carefully read all the testimony in this very voluminous record, and are unable to see how the jury could have reached a different conclusion, if they gave any credence to the evidence introduced on the part of the state. Whatever might be our own opinion of the credibility due to the defendant's account of the transactions and doings referred to, we could not give effect thereto by usurping the province of the jury or by disturbing their verdict with-

out some error of law apparent in the record. We find no such error and must therefore affirm the judgment. All the judges concur.