MARY CARNEY, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Opinion Filed December 7, 1920.

1. **STREET RAILROADS:** Negligence: Two Counts In Petition: Separate Causes of Action: Adverse Verdict on One: Not Appeal-

ed: Liability Ended. In an action for damages on account of personal injuries alleged to have been sustained by plaintiff by reason of the negligence of the defendant, where the petition was in two counts and each count constituted a separate cause of action against the defendant, joined for convenience, a verdict and judgment on the first count standing unappealed from by plaintiff, constitutes a conclusive adjudication against plaintiff as to the liability of defendant as for the alleged negligent acts of defendant complained of in that count.

2. ———: ———: ———: ———: Adverse Verdict on One Does Not Defeat Recovery on Other. In an action for damages on account of personal injuries, where the petition was in two counts, a verdict and judgment against the plaintiff on the first count of her petition seeking to recover damages for injuries caused by alleged negligence in closing the door of the car from which plaintiff was alighting so as to break the bones of plaintiff's wrist, did not conclusively establish the fact that plaintiff received no blow whatsoever by the closing of the door, and that she consequently was not dazed when she alighted to the street and unable, momentarily, to extricate herself from danger from the swinging of the rear end of the car which swung out and struck her in turning, inflicting injuries for which she seeks recovery in the second count of her petition.

3. ———: ———: Alighting Passenger: Contributory Negligence: Evidence: Question for the Jury. In an action for damages on account of personal injuries alleged to have been sustained by plaintiff, who was a passenger on one of defendant's street cars and who claimed to have received a blow as she was attempting to alight by the closing of a door upon her wrist so that she was in a dazed condition as she stood momentarily in the street thereafter, and was struck by the rear end of the car which swung out in turning, held that the question of plaintiff's contributory negligence was one for the jury.

4. WITNESSES: Privileged Communications: Attorney and Client: Fraud: Effect. In an action for damages on account of personal injuries alleged to have been sustained by plaintiff who was a passenger on one of defendant's street cars, by being struck by the rear end of the car swinging out in turning whilst in a dazed condition from a blow on the wrist caused by closing a door as she was alighting, testimony of attorneys first engaged by plaintiff in her case offered by defendant, to the effect that plaintiff stated to the attorneys that the fracture of her arm occurred from her being struck by the body of the car and knocked down, and made no statement claiming her hand was caught in the front door of the car, held that the trial court properly excluded

Carney v. United Rys. Co.

the testimony of these witnesses, such communications between client and counsel, under section 6362, Revised Statutes 1909, are privileged and cannot be violated or set aside upon a mere suggestion of fraud.

5. **INSTRUCTIONS:** Measure of Damages: Using Phrase "Injuries in Question:" Not Reversible Error. In an action for damages on account of personal injuries alleged to have been sustained by plaintiff, who was a passenger on one of defendant's street cars, and who claimed to have received a blow as she was attempting to alight by the closing of a door upon her wrist so that she was in a dazed condition as she stood momentarily in the street thereafter, and was struck by the rear end of the car which swung out in turning, an instruction which told the jury that if, under the evidence and the court's instructions concerning the cause of action set up in count number 2 of plaintiff's petition, they should find in favor of plaintiff, then to assess plaintiff's damages at such an amount as they believe from the evidence would be a fair compensation for her pain, if any, which she has suffered occasioned by her injuries in question, *held* that while the instruction may be subject to criticism as being too general in form, the use of the words "injuries in question" did not constitute reversible error.

6. ——: ——: Complained of as too General: Duty to Offer Limiting Instruction. Furthermore, if the defendant regarded the instruction as too general or too indefinite in this respect, it was its duty to offer a limiting instruction.

7. ——: Referring to Pleadings: Reference to Particular Count in Assessing Damages: Harmless. While the jury should not be referred to the pleadings to ascertain what the issues are, no harm could result from the reference to the second count of the petition in an instruction for plaintiff dealing only with the damages assessable on that count.

8. ——: Improper Allowance for Loss of Earnings and Medical Attention: Remittitur: Harm Cured. An instruction on the measure of damages that improperly allows a recovery for loss of earnings and for medical attention, where the evidence shows that plaintiff sustained no such loss properly chargeable against defendant, *remittitur* of the amount thus improperly allowed cured any harm which may have been done by this part of the instruction.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Charles B. Davis*, Judge.

REVERSED AND REMANDED (*with directions*).

*Charles W. Bates, T. E. Francis, Chauncey H. Clarke* and *Albert D. Nortoni* for appellant.

*E. M. Grossman* and *J. L. Hornsby* for respondent.

(1)   Where the undisputed facts relied upon to establish contributory negligence are such as may in the judgment of sensible men ·lead to very different conclusions, as to whether they establish contributory negligence or want of care, the jury is the tribunal to determine. the question.   Norton v. Ittner, 56 Mo. 351; Mauerman v. Siemerts, 71 Mo. 101; Petty v. Railroad, 88 Mo. 306-315; Gratiot v. Railroad, 116 Mo. 466; Paden v. Van Blarcom, 181 Mo. 117, 128; Eberly v. Ry. Co., 96 Mo. App. 361, 368; Shamp v. Lambert, 142 Mo. App. 567; Campbell v. Ry. Co., 175 Mo. 161, 172; Berry v. Railroad, 124 Mo. 223, 244.   (2) The fact that defendant's servants, the motorman and conductor, could, in the proper performance of their duty, have seen plaintiff's danger and prevented the injury to plaintiff was of itself sufficient ground for overruling defendant's demurrer to .the evidence.   Cole v. Ry. Co., 133 Mo. App. 440-443; Potter v. Railroad, 136 Mo. App. 125-153; Shipley v. Railroad, 144 Mo. App. 7-24; Virginia Trust Co. v. Raymond, 120 Va. 674.

ALLEN, J.—This is an action for damages on account of personal injuries alleged to have been sustained by plaintiff by reason of the negligence of the defendant, a street railway company.   The petition is in two counts.   In the first count it is alleged, in substance, that on August 8, 1916, plaintiff was a passenger upon one of defendant's east bound street cars on its "Maryland Avenue" line, in the City of St. Louis;   that the street car proceeded eastwardly to Fourth street, where it turned north into the latter street and proceeded northwardly on that street to a point near the intersection of Fourth street and Locust street where it

stopped for the purpose of discharging passengers, this being the usual and customary stopping place for such purpose. And it is averred that while plaintiff was in the act of alighting from the front platform of said car, and before she had completed the act of alighting therefrom, or had had a reasonable opportunity so to do, and while she was grasping with her left hand a perpendicular rod located on the inside of the front platform vestibule, and while in the exercise of ordinary care for her own safety, the defendant's agents and servants in charge of the car negligently closed the front door of the front platform vestibule of the car and negligently permitted said door to "slide shut" on plaintiff's left wrist with such force and violence as to break and fracture the bones thereof. Alleging that by reason of the injuries so received plaintiff suffered great pain and was confined to her home and to her bed for nine weeks, that her wrist and hand are permanently disabled, and that she lost her earnings as a school teacher for a period of five years and was compelled to make expenditures for medical services and treatment in the sum of about $100, judgment is prayed on this count in the sum of $3500.

In the second count it is again alleged that plaintiff was a passenger on said car on defendant's Maryland Avenue line, and that the same stopped on Fourth street near Locust street for the purpose of discharging passengers. It is then alleged that at the said point the car "makes a turn to the left and in a northwestwardly direction to the northernmost tracks on Locust street in order to proceed westwardly on said Locust street; that in making the turn the body of the car necessarily swings eastwardly and northeastwardly from the easternmost tracks on Fourth street; "that as the plaintiff alighted, said car was started by defendant's agents and servants charge thereof with such negligent and careless suddenness and speed as to cause the body of said car to swing outwardly from said tracks toward plaintiff so rapidly and so speedily as to give plaintiff, who was in the exercise of ordinary

care, no opportunity to withdraw from a position of danger, with the result that the body of said car knocked and threw plaintiff to the ground, causing bruises and contusions on the whole of the left side of plaintiff's body, and said car struck plaintiff's left foot and ankle, turning and spraining said ankle." An ordinance of the City of St. Louis is pleaded providing, in substance, that in stopping to discharge or take on passengers a street car shall be kept stationary for a sufficient length of time to enable passengers to safely board or leave the car. And it is alleged that the defendant's agents and servants violated this ordinance in negligently failing to permit the car to remain stationary for a sufficient length of time to enable plaintiff to safely leave the same. Alleging that plaintiff suffered great pain as a result of the injuries alleged in this count to have been received by her, that she was confined to her bed and home for a period of nine weeks, and lost her earnings as a teacher for a period of five weeks, that her earning capacity has been permanently impaired, that "she has suffered expense to the extent of $500," and was compelled to expend about $100 for medical services and treatment, judgment is prayed on this count in the sum of $3500.

The answer to the first count is a general denial.

The answer to the second count is a general denial coupled with a plea that whatever injuries, if any, plaintiff sustained, were caused by her own negligence "in assuming and retaining a position in close proximity to a street car while said street car was rounding a curve."

The trial below, before the court and a jury, resulted in a verdict for the defendant on the first count of plaintiff's petition, and in favor of plaintiff on the second count thereof, assessing her damages on this count at $1250. Judgment followed accordingly, from which the defendant prosecutes this appeal.

The evidence shows that on the morning of August 8, 1916, plaintiff, who is a teacher in the public schools of the City of St. Louis, took passage upon one of de-

fendant's east bound cars on its Maryland Avenue line, in company with her sister, at a point near plaintiff's home on Maryland Avenue in said city; and that plaintiff and her sister remained on the car until it turned north into Fourth street, the eastern end of the Maryland Avenue line, and had proceeded nearly a block north on Fourth street to a point immediately south of Locust street. At Fourth and Locust streets the Maryland Avenue cars turn west into Locust street. The evidence is that this car was delayed en route for some reason, at a point on Olive street near Thirteenth street, for a period of ten or twelve minutes, and was consequently behind its scheduled time when it reached Fourth street.

Plaintiff testified that when the car stopped at the aforesaid point on Fourth street near Locust street, she and her sister proceeded to leave the car by way of of the door at the right of the front platform vestibule, they being the last passengers to leave the car; that plaintiff's sister alighted first, and that while plaintiff was in the act of alighting, having her foot on the car step and grasping with her left hand a rod inside of the door, the motorman, by means of a lever, hurriedly closed the door, whereby her wrist was struck by the door, and the bones thereof were broken. She testified that because of this blow to her wrist she was very much dazed, and that when she stepped to the ground she stood for a moment holding her wrist, being unable to move; that the motorman started the car forward with great rapidity; that plaintiff's left hand was thereupon struck by some part of the front portion of the car breaking a bone in that hand, and that the rear part of the car swung out and hit her, throwing her to the ground, and that the 'trailer bar'' at the rear of the car swung out and caught her foot, injuring it.

Plaintiff's sister, Nellie Carney, who, as said, left the car immediately in front of plaintiff, testified that after stepping from the car she turned around and saw plaintiff standing near the car holding her left wrist with her right hand. Referring to plaitiff, the witness

said: "She was perfectly dazed." The witness stated that when she thus turned around and saw plaintiff holding her left wrist with her right hand the car was going at full speed. It appears that plaintiff's sister has not the use of her right arm. She testified that she attempted to draw plaintiff out of danger, but was unable to do so. She said: "She (plaintiff) was still standing with her eyes closed, and I wanted to put my hand to draw her and at that moment the car struck her. I was unfortunately—she was to my right and I couldn't do it (indicating) with this hand. So I missed her in reaching over."

Defendant called as witnesses two men who assisted plaintiff after her injury. One of them, Morris Koenisburg, testified that he was standing on the southeast corner of Fourth and Locust streets at the time; that he observed the car turning and plaintiff being pushed forward by the rear part thereof, and that he saw plaintiff fall to the street. He had not observed plaintiff prior to the time when she was struck by the rear end of the car in turning. The other witness, Walter Richter, testified that he was standing at the southeast corner of Fourth and Locust streets and saw plaintiff and her sister leave the car; that plaintiff's sister at once started to cross Fourth street in a northeasterly direction; that plaintiff "got off the car and stood still and appeared to be looking into space;" that the car "started forward and the rear end of the car pushed her over."

The defendant called two witnesses who, it is said, were defendant's servants in charge of the car, as motorman and conductor respectively, on the occasion in question. Neither knew anything of the casualty. A physician who had been appointed by the court to make a physical examination of plaintiff testified in behalf of defendant. Two witnesses, attorneys at law, were called by defendant but were not permitted to testify as to statements made to them by plaintiff. The exclusion of this proffered testimony will be considered in the course of the opinion.

The cause was first submitted to this court at our last term, and in an opinion by NIPPER, C., we affirmed the judgment. Thereafter a motion for rehearing filed by defendant was sustained, and the cause has since been reargued and resubmitted.

I. The first point made by appellant's learned counsel involves the question as to the effect to be given to the finding of the jury against the plaintiff on the first count of her petition. It is argued that but for the evidence for plaintiff tending to show that her arm was struck by the door as she was leaving the car, breaking the bones of her wrist, by reason whereof plaintiff, it is said, was dazed and unable to move, she must be convicted of contributory negligence as a matter of law in standing in the street, after alighting from the car, and permitting the rear end thereof to swing out and strike her in turning. And many authorities are cited in support of the contention that one who voluntarily remains standing in a street so near to a street car as to be struck by the swing or "overhang" of a car as it turns, is guilty of contributory negligence as a matter of law. These authorities we need not here discuss. It appears to be conceded by appellant that if plaintiff was in fact injured by the closing of the door, whereby she was dazed, so that, as she said, she was not capable of moving for the time being, she could not, with propriety, be adjudged guilty of negligence as a conclusion of law in allowing herself to be struck by the rear of the car as it turned. But it is earnestly insisted that the jury's verdict against plaintiff on the first count of the petition necessarily constituted a finding adverse to plaintiff's version of the facts involved in that count, and conclusively established the fact that plaintiff was not injured by being struck by the door, as alleged in the first count and as testified to by her; that therefore on the record, as it now stands, there is nothing to relieve plaintiff from the effects of her negligence in remaining in the street so near the car as to be struck by the end thereof while turning, and that for this reason the judgment in plaintiff's favor on the second count must now be reversed.

There can be no doubt that the verdict and judgment on the first count, standing unappealed from by plaintiff, constitutes a conclusive adjudication against plaintiff as to the liability of defendant as for the alleged negligent acts of defendant complained of in that count. That count constituted a separate cause of action against the defendant, joined for convenience with the cause of action set up in the second count, and the finding against plaintiff on the first count concludes the question of liability as to the cause of action therein counted upon. [Hunt v. Railroad Co., 262 Mo. 271, l. c. 277, 171 S. W. 64; Ham & Ham Lead & Zinc Inv. Co. v. Lead Co., 269 Mo. 654, 192 S. W. 407.] But we are unable to agree with appellant's contention that the verdict on the first count conclusively establishes the fact that plaintiff received no blow whatsoever by the closing of the door, and that she consequently was not dazed when she alighted to the street, and unable, momentarily, to extricate herself from danger. In discussing this question appellant's learned counsel quote from the opinion of our Supreme Court in State ex rel. v Branch, 134 Mo. 592, l. c. 603, 604, 36 S. W. 226, as follows: ''The law at this day is well settled that the conclusiveness of the judgment, as between the parties to it, is not confined to the entire matter litigated, but includes the finding of any facts which were in issue and were necessarily decided.'' [Cromwell v. County of Sac, 94 U. C. 351; Freem Judgm., sec. 249.] We do not question the doctrine there announced, but we think that it does not warrant us in holding in this case that the verdict on the first count conclusively establishes that plaintiff received no blow or injury of any character to her arm or wrist as she was in the act of alighting from the car; for this was not a matter necessarily decided by such verdict.

What prompted the jury to return a verdict adverse to plaintiff on the first count and one in her favor on the second count, we cannot say. But, in view of the evidence tending to show a hurried closing of the door as plaintiff was in the act of alighting, and a sudden propulsion of the car forward whereby plaintiff was

almost immediately thereafter thrown to the street by the outward movement of the rear portion of the car, the jury may have concluded that, though plaintiff's wrist was struck by the door, causing her pain, whereby she became dazed and confused, nevertheless the breaking of the bones did not occur in that manner, though plaintiff may have so thought. In any event, we regard it as clear that we cannot say that because of the finding upon the first count adverse to plaintiff, plaintiff must perforce be regarded as having received no blow upon her wrist by reason of the closing of the door as she was leaving the car, whereby she was disconcerted and dazed as she alighted to the street. The testimony of plaintiff's sister tends to corroborate that of plaintiff to the effect that plaintiff stood as though dazed; and the testimony of the witness Richter, a disinterested witness, is that plaintiff stood as though looking into space. We think that it would be an unwarranted assumption that the jury rejected altogether the testimony tending to show that plaintiff received a blow as she was attempting to alight, and that she was in a dazed condition as she stood momentarily in the street thereafter.

We are therefore of the opinion that the question of plaintiff's contributory negligence was one for the jury; assuming, without deciding, that but for the evidence tending to show that plaintiff was dazed by a blow upon her wrist, her negligence would appear as a matter of law.

We consequently hold that we cannot with propriety disturb the judgment on the second count on the aforesaid ground urged by appellant.

II. On cross-examination plaintiff was asked if she had not had attorneys in the case other than counsel then representing her, and she replied in the affirmative In reply to a further question she said that she had engaged Mr. C. C. Collins of the firm of Collins, Barker & Britton. Later defendant called as witnesses both Mr. Barker and Mr. Collins, members of the aforesaid law firm. Mr. Barker was asked if plaintiff at any

time made a statement to him as to how the fracture of her wrist occurred on August 8, 1916; and he replied that plaintiff had made such statement. He was then asked the following question: "I will ask you if she stated to you that that injury occurred, the fracture of her wrist, owing to being struck by the side or body of a car and knocked down?" This question was objected to by plaintiff's counsel on the ground that it was leading and suggestive, and that the statement made by plaintiff, if any, was a privileged communication. The witness then said to the court: "I will state, Your Honor, all the information I have about this case came to me while the relationship of attorney and client existed." Defendant's counsel thereupon reframed his question as follows: "State what Miss Carney said to you as to the manner in which she received the fracture of her wrist?" This was objected to by plaintiff's counsel on the ground that any such statement by plaintiff was a privileged communication. The objection was sustained, defendant excepting. Thereupon defendant's counsel made the following offer of proof: "I offer to prove by this witness that the plaintiff stated that the fracture of her arm occurred and resulted from being struck by the body of a car and knocked down, and made no statement claiming her hand was caught in the front door of the car." The record does not show that the court made any ruling as to this offer of proof.

Defendant thereupon called Mr. Collins to the stand and asked him, in substance, the same question which had been put to Mr. Barker and as to which objection had been sustained. Plaintiff's counsel made the same objection as that made to the question propounded to Mr. Barker, and the court again sustained the objection, defendant excepting. Defendant's counsel thereupon said: "We will make the same offer of proof without repeating it."

It is earnestly contended by appellant that the trial court erred in excluding the aforesaid proffered testimony of these witnesses. The contention is that the proof which defendant offered to make by these wit-

nesses would show that plaintiff was attempting to perpetrate a fraud upon defendant; and that the rule of privilege cannot be invoked to prevent the discovery and exposure of such attempted fraud.

Our statute, section 6332, Revised Statutes 1909, provides as follows: "The following persons shall be incompetent to testify . . . Third, an attorney concerning any commuication made to him by his client in that relation, or his advice thereon, without the consent of such client."

This section is but declaratory of the common-law rule of privilege as to communications between attorney and client. The rule at common law was subject to the exception that one cannot employ or consult with an attorney for the purpose of being aided in the commission of a future crime or fraud and afterwards seal the lips of his attorney by invoking the rule of privilege. And the statute has been thus interpreted. [See State v. McChesney, 16 Mo. App. 259; Hamil v. England, 50 Mo. App. 338; State v. Faulkner, 175 Mo. 546, 75 S. W. 116; State v. Lehman, 175 Mo. 619, 75 S. W. 139.; Gebhardt v. United Railways Co., 220 S. W. 677.] Thus a statement made by one to his attorney, seeking the latter's aid in collecting a promised bribe, is not within the rule of privilege. [See State v. Faulkner, supra; State v. Lehman, supra.] Likewise where an attorney prepared a bill of sale with the intent to defraud creditors, and gave advice concerning the same, it was held that he would be compelled to testify to what his client stated to him at the time. [Hamil v. England, supra.]

In 1 Thornton on Attorneys at Law, pp. 214, 215, sec. 121, it is said:

"Where an attorney is consulted for the purpose of obtaining advice as to the perpetration of a fraud, or in aid or furtherance thereof, the communications made to him by one having such purpose in view are not privileged. If the client discloses his fraudulent purpose, and the attorney does not join in the scheme but repudiates all connection with it, there cannot be,

properly speaking, professional employment to effect such purpose, and consequently there is no privilege; if the client does not frankly and freely disclose his object and intention, as well as the facts, there is no confidential disclosure and, of course, no privilege; if the attorney, knowing the facts, agrees to aid the client in the perpetration of the fraud, he then becomes a party to the transaction, and the communications made to him cease to be entitled to privilege from disclosure. Thus, a communication ceases to be privileged where the client's purpose is to cheat or defraud his creditors, as, for instance, by a fraudulent conveyance of his property or an attempted avoidance of bankruptcy or insolvent laws. *A mere suggestion of fraud, however, is not enough to warrant the court to compel the disclosure of statements made by a client to his counsel.*" (Italics ours.)

In Jones Commentaries on the Law of Evidence (1914), Vol. 4, sec. 753, p. 516 et seq., it is said: "Professional communications are not privileged when such communications are for an unlawful purpose, having for their object the commission of a crime. They then partake of the nature of a conspiracy, or attempted conspiracy, and it is not only lawful to divulge such communications, but under certain circumstances it might become the duty of the attorney to do so. The interests of public justice require that no such shield from merited exposure shall be interposed to protect a person who takes counsel how he can safely commit a crime. It is no part of the lawyer's duty to advise his clients in what manner they may commit crime or fraud with impunity; hence, the privilege does not extend to communications made in furtherance of prospective criminal acts. . . . It would seem, however, that the principle is the same whether the communications relate to the commission of offense generally punishable by the criminal law or to frauds upon creditors. If, in either case, attorney and client enter into a conspiracy to violate the law, neither should be allowed to conceal the unlawful purpose under the cloak of pro-

fessional privilege. There is no confidence as to the disclosure of iniquity.''

After a further discussion of the subject it is said: ''But there should be some *independent proof of such wrongful purpose*; for the mere suggestion of fraud does not afford sufficient ground for setting aside the general rule.''

Having in mind the principle upon which this exception to the general rule rests, we may advert again to the state of the record before us touching this matter. It will be noted, in the first instance, that the record is barren of even the slightest suggestion that this plaintiff went to Messrs. Collins and Barker for the purpose of seeking their aid in the perpetration of a fraud. There is nothing to indicate that plaintiff then contemplated any fraud; nor is there anything whatsoever to suggest that counsel whom she then consulted advised her in any manner respecting any contemplated future fraudulent conduct on her part. Nor was there any attempt or offer to show that upon the statement made by plaintiff to her former counsel she was advised by such counsel that she had no cause of action. There was no offer to show that plaintiff receiver any advice from such counsel.

The suggestion of fraud in this connection appears to be based upon the idea, hinted at in the briefs, that plaintiff doubtless received advice from her former counsel to the effect that if the casualty occurred in accordance with her statement to him, then she had no cause of action; and that plaintiff thereupon sought other counsel and reframed her story as to the facts in order to make out a case against the defendant; and that consequently plaintiff now is seeking to perpetrate a fraud upon defendant in attempting to recover upon false testimony. But, as said, there was no offer to prove any such state of facts; and the theory rests in conjecture only.

If, indeed, we are to hold that the case before us falls within the aforesaid exception to the general rule regarding privileged communications, such ruling must

proceed solely upon the broad ground that a party litigrant, in order to impeach the testimony of an adverse party, may compel the latter's counsel, or former counsel, to testify to statements made to him by such adverse party while the relation of client and attorney existed; this, not upon the theory that such party had any fraudulent purpose or intent in consulting with his counsel, but upon the theory that by thus impeaching the testimony of such party, an unmerited, and hence fraudulent, recovery by him might be prevented. We do not understand this to be the law; and we have been referred to no authority, in this jurisdiction or elsewhere, so holding. And it seems quite clear that to go to this length would be to virtually abrogate the statute supra; for it is easy to assert that a party is fraudulently seeking to prevail on false testimony, and that therefore statements of such party to his counsel should be admitted to frustrate such alleged attempt to defraud.

Appellant's learned counsel lay much stress upon the ruling in Gebhardt v. United Railways Co., supra, (220 S. W. 677). In that case Mr. Fensky, an attorney, had been consulted by the plaintiff and brought an action for the plaintiff to recover for personal injuries claimed to have been received by her while a passenger on a street car of the defendant which was derailed. Before the case came to trial the plaintiff, in Mr. Fensky's office, admitted to him, in the presence of another attorney, that she was not a passenger on the derailed car. Mr. Fensky thereupon withdrew from the case. On the trial of the case these attorneys were allowed to testify as to the statements made to them by plaintiff. In approval of this the Supreme Court said; "The privileged communication may be a shield in defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society. The law does not make a law office a nest of vipers in which to hatch out frauds and perjuries."

In our opinion that case does not support appellant's contention in the case before us. In the Gebhardt case there was more tha a mere suggestion of fraud; for it appeared that plaintiff procured the services of Mr. Fensky with the design and object of perpetrating a fraud, as she subsequently admitted to him. The instant case presents no such situation. Nor, as said, was there any offer to show that this plaintiff was advised by her former counsel that upon her statement to them she had no cause of action, so that it might be said that she thereupon undertook to perpetrate a fraud upon the defendant by changing her story so as to make out a cause of action. Were this the case we would have a different situation to deal with; one as to which we need here express no opinion.

Appellant also lays no little stress upon the opinion of this court in State v. McChesney, 16 Mo. App. 259, where it was held that statements made by one to an attorney while seeking advice regarding an intended future violation of the law were not privileged, and the attorney could be compelled to testify regarding such statements. The case is in no wise similar to the case at bar, and it not here persuasive.

We are also cited to the case of Standard Fire Ins. Co. v. Smithhart, 211 S. W. 441, an opinion of the Kentucky court of appeals. The suit was one on fire insurance policies covering plaintiff's house, which had burned; and the defense was that plaintiff had been instrumental in having the house burned during her absence at night. After the fire, and before the institution of the suit, plaintiff conferred with an attorney and had him prepare and forward to the company proofs of loss. Nothing was then said by plaintiff to her counsel indicating that she had been guilty of any wrongdoing or intended any fraud upon the company. The policies were returned to plaintiff's said counsel, the insurance company declining to pay on the ground that the fire was of incenditary origin and that the plaintiff was a party thereto. Thereupon, in consultation with her said attorney, plaintiff made statements to him indicating

that she knew that her house was to be burned during her absence. Her counsel then declined to have anything further to do with the matter; and upon the trial of a suit instituted upon the policies by other counsel, her former counsel was called to testify as a witness. The court of appeals held that his testimony as to the statements made to him by the plaintiff were not privileged.

This ruling is in accord with the ruling of our Supreme court in the Gebhardt case, supra, as well as with the rulings in other cases cited above. But we think that it affords no support for defendant's contention in this case; for the plaintiff in that case, as in the Gebhardt case, sought the aid of her former counsel for the purpose of having him unwittingly aid her in the perpetration or consummation of a fraud.

While the courts are ever zealous in frustrating fraud, the salutary rule which protects, as privileged, communications between client and counsel, expressly adopted by legislative enactment in this State, cannot be violated or set aside upon a mere suggestion of fraud. As shown by the quoted excerpts above, the reason for the so-called exception to the rule where counsel is consulted as to contemplated crime or fraud is that in such cases there is either no professional employment, properly speaking, or no confidential disclosure within the meaning of the law. But the facts of this case do not bring it within that doctrine.

We are therefore of the opinion that the trial court did not err in excluding the testimony of these witnesses.

III. The giving of instruction No. 4 at the instance of plaintiff is assigned as error. This instruction was one on the measure of damages recoverable under the second count of the petition. It told the jury that if, under the evidence and the court's instructions "concerning the cause of action set up in count No. 2 of plaintiff's petition," they should find in favor of plaintiff, then to assess plaintiff's damages at such amount as they believed from the evidence would be "a fair compensation for her pain, if any, which she has suffered occasioned by her injuries

in question,"—allowing a recovery also for loss of earnings and medical treatment; the verdict in all on this count not to exceed $3500.

It is argued that this instruction "is erroneous, vague, uncertain and misleading and a misdirection." It is contended that in allowing the jury to assess plaintiff's damages for pain, if any, which she suffered, occasioned by her "injuries in question," the jury were not confined to an assessment of damages on account of injuries complained of in the second count; and that there was no attempt to segregate or separate the elements of damage assessable under the second count from those involved in the first count on which the verdict was for the defendant.

We do not think that the use of the words, "injuries in question," constitutes reversible error. In this respect the instruction may be subject to criticism as being too general in form, but this alone would not be reversible error. If defendant regarded the instruction as too general or too definite in this respect, it was its duty to offer a limiting instruction. [See Browning v. Railroad, 124 Mo. 55, 27 S. W. 644; State ex rel. v. Reynolds, 257 Mo. 19, 165 S. W. 729.] The jury had before them the evidence regarding the various injuries suffered by plaintiff and the results thereof. The first count was predicated alone upon the alleged breaking of the bones of plaintiff's wrist by the closing of the door upon it. The injuries complained of in the second count consisted of bruises to plaintiff's shoulder and hip, both of which, it is said, were "bruised black," and an injury to plaintiff's foot, which plaintiff said "wasn't so serious," though she said: "The foot still cramps." The injury to the back of plaintiff's hand, to which she testified, does not appear to have been alleged in either count. While it appears that plaintiff suffered pain from her various injuries, and particularly from the breaking of her wrist, we think that the evidence afforded a sufficient basis for the assessment of damages by the jury as for pain and suffering under the second count. In this respect the facts are unlike those involved in Veiss v. United Rys. Co., 184 Mo. App.

30, 167 S. W. 615, cited by appellant, where the evidence afforded no means for distinguishing between those injuries for which defendant could be held liable and those for which no recovery could be had. And we do not think that this instruction could well have led the jury to assess damages for pain resulting from the injuries complained of in the first count.

This instruction is also assailed on the ground that it improperly refers the jury to the pleadings in the case. While the jury should not be referred to the pleadings to ascertain what the issues are (Bank v. Dowler, 163 Mo. App. 65, l. c. 68, 145 S. W. 843; Small v. Ice & Fuel Co., 179 Mo. App. 456, 162 S. W. 709), no harm could result from the reference to the second count of the petition in this instruction dealing alone with the damages assessable on that count.

The instruction is further attacked on the ground that it improperly allows a recovery for loss of earnings and for medical attention, whereas the evidence indicates that the loss of plaintiff's earnings as a teacher was due primarily, at least, to the breaking of the bones of her arm, and the evidence shows no medical expense incurred except in and about the treatment of plaintiff's arm. The instruction appears to be subject to this criticism. But upon resubmission of the case in this court respondent voluntarily made a remittitur of $160, this being the total of the amount shown to have been lost by plaintiff as earnings together with her expenditures for medical treatment; thus curing any harm which may have been done by this part of the instruction. [Walters v. United Rys. Co., 165 Mo. App. 628, 147 S. W. 1098.]

With the aforesaid remittitur made, we do not regard the verdict as excessive, calling for interference at our hands.

In view of the foregoing we would be warranted in affirming the judgment for $1090. But in order that the correct judgment may appear below, the judgment will be reversed and the cause remanded with directions to the circuit court to enter judgment for plaintiff in the

sum of $1090, with interest from the date of the entry of the original judgment; the costs of this appeal to be taxed against respondent. It is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.