Andrews, Adm'x. vs. Simms, Ad.

ANDREWS, ADM'X. V. SIMMS, AD.

| 33 | 771 |
| f78 | 75 |
| 33 | 771 |
| 84 | 368 |

1. EVIDENCE: *Privileged communications; Attorney and client.*
   Any communication made by a party to an attorney while taking his professional advice, is privileged and not admissible in evidence. This is a rule of public policy and for the interest of justice. The most unlimited confidence between attorney and client should be encouraged by requiring that in all facts communicated in professional consultation, the lips of the attorney should be forever sealed. It makes no difference that no fee is charged by or paid to the attorney.

2. WRITING OBLIGATORY: *Endorser and endorsee; Statute of limitations.*
   The endorsement of a writing obligatory or promissory note, after maturity, makes it in effect as between endorser and endorsee, an inland bill of exchange. The endorsement of a note or writing obligatory constitutes a new and distinct contract from the note. The maker and endorser are liable on different contracts, and the statute of limitations of five years applies to the endorsement, and ten years, to the writing obligatory.

3. ENDORSEMENTS IN BLANK: *Rights of assignee.*
   The holder of paper endorsed in blank may write over the endorser's name directions to whom it shall be paid, and anything consistent with the endorser's liability, but can not write "demand and notice waived;" for this would enlarge his liability.

4. DEMAND AND NOTICE: *Waiver, inferred from circumstances.*
   A waiver of demand and notice may be found from circumstances and facts *aliunde.*

APPEAL from *Hempstead* Circuit Court.

Hon. J. K. YOUNG, Circuit Judge.

*Gallagher & Newton,* for appellant.

*Williams & Battle, contra.*

CARUTH, *Special Judge.*

Suit on two writings obligatory, made in the fall of 1863, and due in the fall of 1864, payable to Ephraim Mirick, or order. Both notes bear the following endorsement:

"For value received I assign the within to William W. Andrews, waiving demand and notice of non-payment.

"*November* 3, 1864.         "EPHRAIM MIRICK."

They are both sealed instruments.

Mirick departed this life on the 7th day of April, 1874, and these writings obligatory properly verified, were, in March, 1875, presented to Thomas H. Simms, the appellee, his administrator, for allowance as just claims against his estate. They were disallowed, and the disallowance approved upon hearing before the Hempstead Probate Court. An appeal was prosecuted to the Hempstead Circuit Court, and the case was heard by the court sitting as a jury.

The appellee interposed the following defenses:

*First*—The statute of limitations.

*Second*—That the endorsements of the writings obligatory offered by plaintiff as the basis of her claim, were not made by said Mirick except as to the signature.

*Third*—The want of demand upon the makers of said writings obligatory, and notice of non-payment.

To sustain plaintiff's case she read in evidence her notice given to the defendant before presentation to the Probate Court, for allowance; her authentication of the same; the endorsement of disallowance; and finally the original writings obligatory with their respective endorsements.

The date of the death of Mirick was agreed as above indi-cated.

The defendant, to sustain the issues on his behalf, called A. B. Williams, Esq., and testified himself. A. B. Williams testified substantially, that he had practiced law for many years at Washington, where appellant's intestate lived, and had frequently done business for him. That some time in the winter of 1865, or 1866, Andrews came to him as a lawyer for his opinion, stating that these notes had been endorsed to him by Mirick in blank, and asked his advice as to his rights in the premises. He advised him that he might fill up the blanks as they now appear, and Andrews did so. Doesn't remember whether he consulted him at his office or not. The opinion he gave Andrews was as a lawyer, and supposes he so took it, but did not consider himself as his attorney, and made no charge for the advice.

The plaintiff moved to exclude his testimony as being within the rule protecting privileged communications. This motion was overruled.

Simms testified that Andrews told him he had received the writings obligatory endorsed in blank, and that afterwards, under the advice of A. B. Williams, Esq., he had filled in the endorsements as they now appear.

The court declared its conclusions of law :

*First.* Overruling the plea of the statute of limitations.

*Second.* That the filling in of the endorsements was void in law, and a fraud in Mirick.

*Third.* That a demand and notice, or a waiver thereof, was necessary to bind Mirick, and disallowed the claim.

To reverse which, this appeal is prosecuted.

The initial point of consideration is the admission of Wil-liams' testimony against the objection of defendants' counsel.

The motion to exclude should have prevailed.

Any communication made by Andrews to Judge Williams, whilst taking his professional advice, is privileged. Such is the rule, wisely laid down by the law, and we see nothing in the record which would justify us in making this an exception. It was adopted from reasons of public policy, and through a regard to the interests of justice. A wise policy encourages and sustains the most unlimited and generous confidence between lawyer and client by requiring that on all facts confided in professional consultation the lips of the attorney shall be forever sealed. In this case, it is clear Andrews went to Williams as a lawyer for legal advice. It matters not whether a fee was charged on Williams' books. He had an unquestionable right to charge and doubtless Andrews so expected. It is clear the relation of attorney and client existed between them.

The rule does not require any particular form of application or engagement, nor the payment of fees. It is enough—to use Mr. Greenleaf's language—that he was applied to for advice or aid in his professional character. 1 *Greenl. Ev.*, Sec. 241.

Our statute on this subject provides the following persons shall be incompetent to testify :

"An attorney concerning any communication made to him " by his client in that relation, or his advice thereon, with- " out the client's consent." *Gantt's Digest,* 2482.

Believing, as we do, that the principle thus laid down is both salutary and wholesome, and tends to conserve interests of the highest character, we follow it strictly, and hold that the testimony was inadmissible and should have been excluded.

The conclusion of law reached by the court below, that the same statute of limitation applicable to the makers of these writings obligatory, applied to this suit of the assignee against the payee and assignor, Mirick, was an error.

These sealed notes were assignable only by reason of the statute of assignments, and non-negotiable in their character. Andrews' claim must have been and was based upon the contract of assignment or endorsement. As to the note, being a sealed instrument, the statute bar was ten years, and to other written contracts, five years. The endorsement of these writings obligatory, together with the contract implied therefrom, by law, and which the endorsee had a right to insert over said indorsement, constituted a written contract between Andrews and Mirick, within the intent and meaning of the statute prescribing limitations for such contracts. It was separate, distinct and independent from the contract of the maker as evidenced by the writing obligatory, and carried with it, of necessity, its obligations and corresponding enforcement. This contract was not under seal, and we see no reason why the limitations applicable to sealed instruments should be enforced as to it.

That it was such a new contract, seems to be established both upon principle and precedent. Says Mr. PARSONS, in his work on *Notes and Bills.*

"An endorsement being a new and independent contract, every endorser of a bill makes a new contract, and will be considered by the law as the drawer of a new bill. The indorser of a note does not stand in the situation of maker to his indorser." *Parsons' Notes and Bills, vol. 2, p. 25.*

The Supreme Court of the United States, in *Ross* v. *Jones,* 22 Wallace, 589, uses this language :

"The indorser is not a surety in the general sense, but stands in the attitude of a drawer of a new bill, and the maker and indorser *are liable in different contracts ;*" and proceeds to hold that the cause of action never accrued at the same time as to the endorser and maker.

So, the Supreme Court of Iowa held the endorsement of a

promissory note constituted a distinct contract. *National Bank of Michigan* v. *Green*, 33 Iowa, 140. And so rigidly was this doctrine enforced in Louisiana, that her Supreme Court decided in a case where the note itself was void, and not enforcible against the maker, that the contract of assignment was so distinct and independent of the contract of the maker, it should be enforced. *Succession of Weil* 24 *Lou. Ann.*, 139. And the same doctrine obtains in Georgia. *Graham* v. *Maguire*, 39 Ga., 53. The case of *Whistler* v. *Bragg*, 31 Mo., 124, is in point. In that case a non-negotiable promissory note, when past due, was assigned by the payee to Whistler. The Missouri statute of limitations, as to the note, would have been ten years ; but the court held that in a suit between the assignee and assignor, another and different limitation applied, and inasmuch as more than five years elapsed since the cause of action accrued against the assignor—pronounced against the plaintiff. See also *Barker* v. *Cassiday*, 16 Barb., 180.

This court held in *Levy* v. *Drew*, 14 Ark., 336, that when a note has been endorsed after its maturity, it is, in legal effect, as between the indorser and endorsee, an inland bill of exchange, payable on demand ; while between the indorsee and maker it remains a note. These notes were endorsed after maturity, and accordingly, as between Andrews and Mirick, became in effect, inland bills of exchange, and as such must be considered in applying the statute of limitations. More than five years having elapsed, the statute was properly pleaded, and the plea should have been sustained.

The only remaining point for consideration is as to the conclusion of law of the court below, releasing the assignor, because no demand and notice of non-payment was shown. The testimony of Simms discloses the fact that these notes were endorsed in blank, and that long afterwards, Andrews,

without the knowledge or consent of Mirick, wrote over them the waiver of demand and notice. That when these notes were offered in trade to Andrews, he refused them, saying the makers were insolvent, and he would not pick them up in the street; whereupon, Mirick remarked, my name on them makes them good, and they were then accepted.

The contentions of the learned counsel for appellant, are:

*First.* The endorsement, in blank, justified Andrews in filling it as he did; and,

*Second.* If it did not, the language used by Mirick at the time of the contract, was equivalent to a waiver of demand and notice.

We cannot subscribe to either proposition.

The holder of paper, endorsed in blank, may not only write directions to whom it shall be paid, but may, as we believe, write what else he will, consistent with the liability assumed by the endorser. He cannot, for example, write over the indorser's name, "demand and notice waived," for this would enlarge the liability of the indorser. 2 *Parsons Notes and Bills, p.* 20.

It follows, therefore, that the endorsement of the waiver of demand and notice, over the signature of Mirick was unauthorized, and by it he can take nothing.

But it is insisted that the expression used by Mirick at the time of the trade, when it was objected that the makers were insolvent, to-wit; that his name made the notes good, was equivalent to a waiver on his part. There is nothing in that expression which justifies the conclusion that Mirick intended to waive any right. On the contrary, it is in no wise inconsistent with the idea, that being bound as indorser made the paper good, in the event the makers failed to pay on due demand, and he had notice thereof.

We have carefully examined the authorities cited by learned

counsel for appellant. They unquestionably establish the doctrine that a waiver may be found from the circumstances and facts *aliunde;* but none such appear here. No demand and notice having heen made and given by Andrews to Mirick, the indorser was discharged. Such has been the invariable ruling of this court.

It follows from what we have above said, that although the court below erred in the admission of Williams' testimony, and in overruling the plea of the statute of limitations, yet, inasmuch as its judgment of disallowance was right, it must be affirmed.

Let it be so ordered.