511 A.2d 1327

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Holly MAGUIGAN, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1984.

Decided June 30, 1986.

114

---

Eric B. Henson, Deputy Dist. Atty., Gaele McLaughlin Barthold, Chief/Prosecution, Jane Cutler Greenspan, Asst. Dist. Atty., for appellant.

David Kairys, David Rudovsky, for appellee.

Steven A. Morley, Philadelphia, amicus curiae—for Philadelphia Bar Ass'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice *

In this matter we granted allocatur to address the important issue of whether the attorney-client privilege precludes an attorney from disclosing the whereabouts of a fugitive client. By order dated June 27, 1983, the Court of Common Pleas of Philadelphia County entered a judgment of civil contempt against Holly Maguigan, Esquire, ("appellee") because she refused to comply with its order requiring disclosure of the whereabouts of her client, Carlos Aquino ("Aquino"). In *Commonwealth v. Maguigan*, 323 Pa.Super. 317, 470 A.2d 611 (1983), the Superior Court reversed the Court of Common Pleas, holding that the information concerning the whereabouts of appellee's client was privileged. The Commonwealth appealed to this Court and we now reverse for the following reasons.

### I.

Appellee represented Aquino on outstanding charges of rape, statutory rape, corrupting the morals of a minor, indecent assault, and indecent exposure which allegedly occurred on various dates in April, 1981. Aquino had been extradited from Milwaukee, Wisconsin, and was subsequently released on bail. Aquino last appeared in court on January 19, 1983 for a motion to compel a bill of particulars. At that time he was served with a subpoena which required his appearance for trial on April 7, 1983 on the aforementioned charges. During the interim, a federal district court issued an arrest warrant for Aquino on February 9, 1983 for immigration . violations, and an investigation by the Federal Bureau of Investigation in connection with those charges revealed that appellee *may* have received a telephone call from Aquino on February 23, 1983.

On April 7, 1983, Aquino failed to appear for his scheduled trial. Following a forfeiture of bail and the issuance of a bench warrant for Aquino, the Commonwealth made a

* This matter was reassigned to this writer.

motion to compel appellee to provide the "address and phone number" of her client.[1] Appellee's counsel, David Rudovsky, Esquire, immediately raised a Fifth Amendment claim on behalf of appellee because he believed the Commonwealth would charge appellee with harboring a fugitive.[2] The Commonwealth, however, denied any intention of charging appellee with harboring a fugitive, stating that it merely wanted to know Aquino's address:

Ms. McDonough [Assistant District Attorney]:

We are not asking Ms. Maguigan to tell us how to find him or anything. We have a right to know. This Court has a right to know where he is, if she knows, and that's all. We are not asking what communications he has had with her, anything he said with regard to where he has been hiding. Nobody is suggesting that she is going to be prosecuted for anything. We are merely asking is there an address, if she knows his address and the Court deserves to have that.

R. 68a–69a.

Mr. Rudovsky also raised the attorney-client privilege as a reason why appellee would not disclose the whereabouts of Aquino. The trial court proceeded under the assumption that appellee knew Aquino's address, and scheduled argument on the attorney-client privilege issue for April 13, 1983. At that argument, the following discussion occurred between the court and appellee's attorney, Mr. Rudovsky:

THE COURT: Counsellor, it seems to me to avoid engaging in a fruitless exercise whether Ms. Maguigan knows the whereabouts of the Defendant—

MR. RUDOVSKY: You have just asked the question of whether Ms. Maguigan knows the whereabouts of the Defendant. This is slightly different than, materially

1. According to Suzanne McDonough, Esquire, Assistant District Attorney for the Commonwealth, this motion was sparked by a conversation she had with appellee two weeks prior to April 7, 1983, which led her to believe that appellee knew where Aquino was located. R. 56a–57a.

2. According to Mr. Rudovsky, appellee knew for a month before the April 7, 1983 trial date that Aquino would not appear for trial. R. 59a.

different than the question that was posed at the hearing last week, *does she know the address and phone number* of Defendant.

THE COURT: Essentially, that's what I want to know.

MR. RUDOVSKY: I can address that. She does not know the address and phone number of the Defendant.

. . . . .

THE COURT: ... If I am to rule on whether or not she is obligated to notify the Court, or to disclose to the District Attorney the address, phone number or whereabouts of the Defendant I should do so in the context of an actual controversy and all I want to know is whether or not she knows, and that's all I'm going to pursue. I think the Court is entitled to know this.

MR. RUDOVSKY: Judge, without waiving any rights I can represent to the Court that during the course of what we consider to be an attorney-client conversation, as a result of that conversation, [appellee] has some general information about the possible whereabouts of the Defendant, and I put it that way because there is a difference between that and the address issue.

R. 76a–77a.

At the conclusion of the April 13, 1983 argument, the trial court held that the information concerning Aquino's whereabouts was not privileged and ordered appellee to disclose such information. When appellee refused to do so, the court found her in contempt and fined her one hundred dollars ($100.00) per day until she complied with the order.

Thereafter, appellee appealed to the Superior Court and petitioned for a stay of the contempt order pending the outcome of the appeal. The stay was granted on April 26, 1983. On April 29, 1983, however, the Commonwealth petitioned the Superior Court to remand the matter to the Court of Common Pleas for the purpose of granting immunity to appellee under the Immunity Act, 42 Pa.C.S. § 5947

*et seq.*[3] It was the Commonwealth's position that the grant of immunity would eliminate appellee's Fifth Amendment claim. This petition for remand was granted by a Superior Court order dated May 13, 1983 and the trial court heard the Commonwealth's petition for an order of immunity on June 27, 1983. At the June 27, 1983 hearing, the trial court first rejected appellee's contention that it had no jurisdiction to grant immunity,[4] and then granted appellee immunity under the Immunity Act, *supra*. Subsequently, the court issued the following order in language proposed by the Commonwealth which directed appellee to:

> disclose to this Court and the District Attorney's office any information she may have regarding the whereabouts of the ... defendant, Carlos Aquino, and any information she may have on how to locate the defendant Aquino.

Appellee declined to do so arguing: (1) that the court lacked jurisdiction to grant immunity; (2) that the grant of immunity did not effectively protect her rights under the Fifth Amendment; and (3) that the information she had been ordered to disclose was protected by the attorney-client privilege. Once again the trial court found appellee guilty of civil contempt and ordered her to pay a fine of one hundred dollars ($100.00) per day until she complied with its order.

3. Act of April 28, 1978, P.L. 202, No. 53, § 10(78), *as amended,* 42 Pa.C.S. § 5947, provides in pertinent part:
 (a) General rule—Immunity orders shall be available under this section in all proceedings before:
 1) Courts
 2) Grand juries
 3) Investigating grand juries
 4) The minor judiciary and coroners.
 (c) Order to testify.—Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding specified in subsection (a), and the person presiding at such proceeding communicates to the witness an immunity order, that witness may not refuse to testify based on his privilege against self-incrimination.

4. The court also rejected appellee's argument that the Commonwealth was acting in bad faith in seeking the information from her. *Commonwealth v. Holly Maguigan,* No. 8304–1071 (C.C.P.Phila. July 7, 1983).

120

In a second appeal to the Superior Court appellee renewed the above arguments on jurisdiction and the attorney-client privilege.[5] The Superior Court panel concluded that the information sought was within the attorney-client privilege and reversed the order of the trial court.[6] By order dated March 30, 1984 we granted the Commonwealth's petition for allowance of appeal. We disagree with the conclusion that the privilege was applicable and we further conclude that the issue of subject matter jurisdiction was improperly deferred by the Superior Court.

## II.

■ Succinctly stated the appellee contends that there was no proceeding pending before the trial court and, based upon that premise, concluded that the court lacked subject matter jurisdiction to entertain the Commonwealth's petition for a grant of immunity under the Immunity Act, *supra* n. 3. It also follows from this argument that if there was no proceeding pending before the court, the trial judge was then without subject matter jurisdiction to compel appellee's testimony and that all orders issued seeking disclosure by that court were without authority. President Judge Spaeth viewed the jurisdiction question as being both difficult and novel and justified his failure to resolve it on the basis that it was unlikely to arise again. Whether or not the challenge to subject matter jurisdiction is "difficult" or "novel" does not afford a basis for ignoring the issue and permitting the court to decide the merits of a matter

5. Appellee abandoned her argument relating to the scope of the immunity granted.

6. President Judge Spaeth authored an opinion in which Judge Cavanaugh concurred in the result. *Commonwealth v. Maguigan,* 323 Pa.Super. 317, 327, 470 A.2d 611, 624 (1983). A third member of the panel, Judge Montemuro, filed a concurring and dissenting opinion. *Id.* President Judge Spaeth determined that it was not necessary to reach the question of the jurisdiction of the trial judge to grant immunity in view of his conclusion that the privilege was applicable and, therefore, appellee was not required to divulge the information sought. Judge Montemuro found that the trial court had properly exercised its jurisdiction but concluded that the order entered by the lower court was overbroad and should have been modified.

not properly before that court. *See In Re Estate of Poz-zuolo*, 433 Pa. 185, 249 A.2d 540 (1969) (action of appellate court cannot confer jurisdiction upon a court where jurisdiction is nonexistent); *In Re Petition of Acchione*, 425 Pa. 23, 227 A.2d 816 (1967) (appellate court has duty to determine whether lower court had jurisdiction); *Stahl v. Insurance Company of North America*, 408 Pa. 483, 184 A.2d 568 (1962) (appellate court will not determine merits of appeal where trial court did not have subject matter jurisdiction). *See also Arrott v. Allegheny County*, 328 Pa. 293, 194 A. 910 (1937) (jurisdiction must be clearly conferred; it cannot be assumed by implication). We are constrained to conclude that the perceived difficulty as to this issue was not created by the question raised but rather by the circuitous analysis applied to address it.

 It is clear that here there was a proceeding pending before the trial court. On April 7, 1983 the criminal trial of Aquino was scheduled to commence. All of the necessary parties were present with the exception of the defendant. It is unquestioned that the trial of this case was properly before the trial court. Incidental to the power of the trial judge to conduct the trial is the power to command the presence of the participants in that trial. *In Matter of Shigon*, 462 Pa. 1, 329 A.2d 235 (1974); *see also* 42 Pa.C.S. §§ 5904(d), 5905. To exercise this latter power the court is authorized and is expected to take the measures necessary to accomplish that result. *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A.2d 362 (1974), (courts of this Commonwealth have inherent power to do all things reasonably necessary for administration of justice); *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193, *cert. denied sub nom. Tate v. Pennsylvania ex rel. Jamieson*, 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971); *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949); *Commonwealth ex rel. Burton v. Baldi*, 147 Pa.Super. 193, 24 A.2d 76 (1942); *Commonwealth v. Brownmiller*, 141 Pa.Super. 107, 14 A.2d 907 (1940). Aquino had not only been subpoenaed to appear on that occasion, but his pres-

ence was additionally required by the bond under which he had been released from custody. There was no question of the court's subject matter jurisdiction to try the criminal charges and also the court's *in personam* jurisdiction to compel the defendant's presence on that occasion.[7]

Here the record shows that the trial court had reason to believe that appellee possessed information that would facilitate bringing the defendant before the bar of that court for the trial of this case. The court's jurisdiction for eliciting this information springs from the criminal proceeding that was then before it. To avoid responding to the court's question, appellee raised, *inter alia*, her rights under the Fifth Amendment of the U.S. Constitution and Article 1 section 9 of the Pennsylvania Constitution. In response to that claim, the trial court ultimately granted immunity under the Immunity Act, *supra*. All of these actions were derived from and are ancillary to the court's initial jurisdiction over the trial of these criminal charges. This procedure is frequently employed where a witness in a trial asserts a self-incrimination claim. Courts have traditionally in ancillary proceedings considered those claims and granted immunity where appropriate. It has never been suggested that the trial court would be required to establish an independent jurisdictional basis for the resolution of this ancillary matter. Nor does the absence of the defendant divest the court of subject matter jurisdiction over the cause.

The availability of the Immunity Act to the court is expressly conferred by the language of the Act itself which provides for its use in proceedings before our courts. 42 Pa.C.S. § 5947(a)(1).[8] Appellee in a very ingenious, albeit

7. *Commonwealth v. Polak*, 438 Pa. 67, 263 A.2d 354 (1970), cited by Judge Spaeth, is clearly inapposite. The subpoena personally served on Aquino on January 19, 1983 directing his appearance for trial on April 7, 1983 was properly issued.

8. Section 5947(a)(1) provides:
 (a) General rule.—Immunity orders shall be available under this section in all proceedings before:
 (1) Courts.

artful, argument attempts to isolate the Commonwealth's request for a grant of immunity under the Act and have us treat it as a matter independent of the criminal proceeding in which it arose.[9] In reality, the application for the grant of immunity was ancillary to the underlying criminal proceeding. Thus, the premise upon which this argument of appellee is predicated is patently flawed. The proceeding from which the court derived its jurisdiction was the criminal trial of Aquino over which the trial court unquestionably had subject matter jurisdiction. Having concluded there was jurisdiction, we must now turn to the applicability of the attorney-client privilege.

## III.

The Commonwealth argues that the attorney-client privilege may not be invoked to shield the whereabouts of a defendant who has absconded while on bail and who has failed to appear for trial. Appellee counters that the information concerning the whereabouts of her client is privileged and also that the order of the trial court is so broad that it permits the Commonwealth to conduct a fishing expedition into Aquino's case file. We will first determine whether the information sought to be elicited from appellee relating to Aquino's whereabouts [10] is privileged and then address the issue of overbreadth of the order.

**9.** The fact that this information may have also been germane to a separate action under 18 Pa.C.S. § 5124, which makes it a third degree felony for a defendant to abscond while on bail, does not negate the relevance of his fugitive status to the underlying criminal trial. Hence it was not necessary, as appellee argues, for the Commonwealth to charge Aquino under the aforementioned statute in order to justify this proceeding.

**10.** In her brief, appellee attempts to make a distinction between "whereabouts" and "possible whereabouts." The brief states:

Nor does she know the whereabouts of her client; she only has some general information about his possible whereabouts.

Appellee's Brief at 15.

Appellee asserted at an earlier point in her brief that the "whereabouts" of her client is not an issue presented in this case, but instead the issue is one of "possible whereabouts." *Id.* at 8–9. We find, however, that appellee's choice of terminology attempts to create an issue not here present. "Whereabouts" does not connote exact loca-

## A.

The attorney-client privilege is deeply rooted in our common law and can be traced to the reign of Elizabeth I, where it was already unquestioned. *See* 8 J. Wigmore, *Evidence* § 2290 (McNaughton rev. 1961). It is the most revered of our common law privileges and, as it relates to criminal proceedings, has been codified in this Commonwealth at 42 Pa.C.S. § 5916:

> In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

This codification is merely a restatement of the common law privilege and its attendant case law interpretations. The rationale underlying this privilege was succinctly and graphically captured in the statement of Professor Mechem which has been quoted with approval by this Court in *Slater v. Rimar, Inc.*, 462 Pa. 138, 148, 338 A.2d 584, 589 (1975):

> "The purposes and necessities of the relation between a client and his attorney require, in many cases, on the part of the client, the fullest and freest disclosure to the attorney of the client's objects, motives and acts. This disclosure is made in the strictest confidence, relying upon the attorney's honor and fidelity. To permit the attorney to reveal to others what is so disclosed, would be not only a gross violation of a sacred trust upon his part, but it would utterly destroy and prevent the usefulness and benefits to be derived from professional assistance. Based upon considerations of public policy, therefore, the law wisely declares that all confidential communications and disclosures, made by a client to his legal adviser for

tion of an individual at any given time, but rather the general locale where a person may be found. The attempt by appellee to insert the adjective "possible" is an effort to create an illusion of a more expansive inquiry than that intended by the court in its order. We will not allow the issue to be obfuscated by an inaccurate restatement thereof.

the purpose of obtaining his professional aid or advice, shall be strictly privileged;—that the attorney shall not be permitted, without the consent of his client,—and much less will he be compelled—to reveal or disclose communications made to him under such circumstances." 2 Mecham on Agency, 2d Ed., § 2297.

462 Pa. at 148, 338 A.2d at 589.

In *Estate of Kofsky*, 487 Pa. 473, 409 A.2d 1358 (1979), we reasoned that the privilege is not concerned with the better ascertainment of the truth, but rather is grounded in a policy entirely extrinsic to protection of the fact-finding process. *Id.*, 487 Pa. at 482, 409 A.2d at 1362. We stated therein that its purpose is to foster a confidence between client and advocate that will lead to a trusting and open attorney-client dialogue. *Id. See also Slater v. Rimar, supra; Alexander v. Queen*, 253 Pa. 195, 97 A. 1063 (1916); McCormick, *Evidence* § 87 (2d ed. 1972).

To preserve the sanctity of the confidence, this Court has historically held that the burden of proof is upon the party asserting that disclosure of the information would not violate the attorney-client privilege. *See Estate of Kofsky, supra; Nadler v. Warner Co.*, 321 Pa. 139, 184 A. 3 (1936); *Moore v. Bray*, 10 Pa. 519 (1849); *Brennan v. Brennan*, 281 Pa.Super. 362, 422 A.2d 510 (1980); *Commonwealth v. Trolene*, 263 Pa.Super. 263, 397 A.2d 1200 (1979); 2 G. Henry, *Pa.Evidence*, § 693 (4th ed. 1953). Moreover, when determining whether the attorney-client privilege is properly invoked, it has been and still remains the practice of this Court to resolve the question upon the particular facts of each case. *Estate of Kofsky, supra; Slater v. Rimar, Inc., supra; Alexander v. Queen, supra; Moore v. Bray, supra; Brennan v. Brennan, supra; Cohen v. Jenkintown Cab Company*, 238 Pa.Super. 456, 357 A.2d 689 (1976).

Although this Court has not had the opportunity to consider whether the whereabouts of a client under court order to disclose his address is protected from disclosure by the attorney-client privilege, other jurisdictions which have addressed the question have concluded that it is not so pro-

tected. *See, e.g., U.S. v. Woodruff,* 383 F.Supp. 696 (E.D. Pa.1974) (attorney may be questioned as to the whereabouts of a client who has jumped bail as long as the questioning does not implicate the underlying case); *Jafarian-Kerman v. Jafarian-Kerman,* 424 S.W.2d 333 (Mo.App.1967) (defendant under order of court absconded with child; whereabouts not privileged); *In the Matter of John Doe,* 117 Misc.2d 197, 456 N.Y.S.2d 312 (1982) (assertion of privilege as to client's whereabouts where client had jumped bail would aid and abet advancement of an unlawful act); *In the Matter of Jacqueline F.,* 94 Misc.2d 96, 404 N.Y.S.2d 790 (1978) (no privilege as to address where privilege could aid guardian's continued evasion of compliance with court's order); *Falkenhainer v. Falkenhainer,* 198 Misc. 29, 97 N.Y.S.2d 467 (1950) (attorneys for defendant in divorce action were not protected from divulging client's address where defendant defied child custody order); *Dike v. Dike,* 75 Wash.2d 1, 448 P.2d 490 (1968) (where client defied custody order, client's address was not privileged).

We are also cognizant that in those cases where a client's address was held to be privileged, the client was not under a court order which was being violated and the information sought went to the heart of the legal advice sought by the client. *See, e.g., Brennan v. Brennan, supra; Matter of Grand Jury Subpoenas Served Upon Field;* 408 F.Supp. 1169 (S.D.N.Y.1976); *In re Stolar,* 397 F.Supp. 520 (S.D.N.Y.1975).

■ Appellee contends that the information sought from her by the Commonwealth and trial court, *i.e.,* the "whereabouts" of her client, renders the precedent established in the "address inquiry" cases inapplicable.[11] We disagree. Where, as here, a defendant is under bail he is under a legal obligation to keep the court informed of his address and there is no legitimate expectation that his address will not be disclosed. Nor is there a legitimate expectation to

11. As already noted, appellee, through counsel, testified that she did not know Aquino's address or telephone number, but that she had some general information as to his possible whereabouts.

believe that those facts leading to his "address" will not be disclosed. "Whereabouts" is defined in Webster's Third New International Dictionary as "the place or general locality where a person or thing is." "Address" is defined therein as "the designation of a place (as a residence or place of business) where a person or organization may be found or communicated with." Although the term "address" is more specific than "whereabouts," both pertain to the place where a person or thing may be found or located. Both further the general inquiry in attempting to secure the presence of the defendant. Thus the initial question presented is the legitimacy of a *per se* rule limiting the inquiry as to a missing defendant to the narrowest possible ground, *i.e.*, his precise address, where the broader inquiry as to whereabouts does not undercut the purpose of the privilege. As noted above, prior precedent established in the "address inquiry" cases is relevant and strongly argues against a *per se* rejection of an inquiry into the whereabouts of a missing defendant.

 We must now consider the question of whether the purposes of the privilege are served in this case by curtailing an inquiry as to Aquino's whereabouts. Aquino's failure to appear for trial and his failure to inform the court of his whereabouts constituted a clear violation of the conditions of bail mandated by Pennsylvania Rule of Criminal Procedure 4013 which provides in pertinent part:

When a person is admitted to bail, the conditions of the bail bond shall be that such person will:

(a) Appear before the issuing authority or court at all times required until full and final disposition of the case;

(b) Submit to all orders and process of the issuing authority or court;

(c) Give written notice to the issuing authority, the clerk of courts, the district attorney, and court bail agency or other designated court bail officer, of any change of address within forty-eight (48) hours of the date of such change; . . . .

We note in addition that Aquino's deliberate failure to appear for his April 7, 1983 trial date constitutes a criminal act and, by its very nature, is a continuing one. Section 5124 of the Crimes Code provides:

(a) Offense defined.—A person set at liberty by court order, with or without bail, upon condition that he will subsequently appear at a specified time and place, commits a misdemeanor of the second degree if, without lawful excuse, he fails to appear at that time and place. The offense constitutes a felony of the third degree where the required appearance was to answer to a charge of felony, or for disposition of any such charge, and the actor took flight or went into hiding to avoid apprehension, trial or punishment.

18 Pa.C.S. § 5124.

Aquino obligated himself to keep the court informed of his whereabouts and to make himself available at the direction of the court. He did not have the right to refuse to disclose his whereabouts to the court, nor could he have had a legitimate expectation that any information in this regard transmitted by him to his attorney would remain confidential. Since it is clear that the court had a right and an obligation to ascertain the requested information and the client had an obligation to supply that information, the only remaining question is whether the attorney-client relationship provides some basis for concluding that the attorney, who may be in possession of this information, should be permitted to refuse to disclose it.

■ The attorney's oath of office requires fidelity to the court as well as to the client. 42 Pa.C.S. § 2522. The Code of Professional Responsibility, Ethical Consideration 7–27 states in part:

Because it interferes with the proper administration of justice, a lawyer should not suppress evidence that he or his client has a legal obligation to reveal or produce....
E.C. 7–27.

Moreover, Disciplinary Rule 4–101(C) provides in pertinent part:

(C) A lawyer may reveal:

. . . . .

(2) Confidences or secrets when permitted under Discipli-
nary Rules or *required by law or court order.*
(3) The intention of his client to commit a crime and *the
information necessary to prevent the crime.*
DR 4–101(C) (emphasis added).

Recently, the Supreme Court of the United States cited a
similar provision in the Iowa Professional Responsibility
Code for Lawyers in *Nix v. Whiteside,* —— U.S. ——, 106
S.Ct. 988, 89 L.Ed.2d 123 (1986), noting that an exception to
the attorney's duty of confidentiality is a client's announced
intention to commit a crime. Although this decision is not
binding upon us, we find it persuasive. Thus we must
reject appellee's assertion that the information concerning
Aquino's whereabouts is privileged.

Our conclusion as to the impact of the Pennsylvania Code
of Professional Responsibility is also buttressed by the
following formal opinion of the American Bar Association,
Committee on Professional Ethics, which addressed an al-
most identical factual circumstance:

When the communication by the client to his attorney is
in respect to the future commission of an unlawful act or
to a continuing wrong, the communication is not privi-
leged. One who is actually engaged in committing a
wrong can have no privileged witnesses, and public policy
forbids that an attorney should assist in the commission
thereof, or permit the relation of attorney and client to
conceal the wrongdoing.

A defendant in a criminal case when admitted to bail is
not only regarded as in the custody of his bail, but he is
also in the custody of the law, and admission to bail does
not deprive the court of its inherent power to deal with
the person of the prisoner. Being in lawful custody, the
defendant is guilty of an escape when he gains his liberty
before he is delivered in due process of law, and is guilty
of a separate offense for which he may be punished. In
failing to disclose his client's whereabouts as a fugitive

under these circumstances the attorney would not only be aiding his client to escape trial on the charge for which he was indicted, but would likewise be aiding him in evading prosecution for the additional offense of escape.

It is the opinion of the committee that under such circumstances the attorney's knowledge of his client's whereabouts is not privileged, and that he may be disciplined for failing to disclose that information to the proper authorities. Equally, the attorney may be disciplined if, upon his client's refusal to surrender upon his advice, he continues to act as his attorney, if the fugitive persists in so evading a trial upon the charges against him, the attorney should terminate their relations. Failing in this, the attorney is guilty of a violation of his oath and of his duty to society.

ABA Formal Opinion No. 155 (May 4, 1936).

In this case appellee, through her counsel, admitted she knew for a month prior to April 7, 1983 that Aquino would not appear for trial and that she had some general information as to his whereabouts. It is clear that the lawyer's fidelity to the client does not extend to aiding and abetting a client in criminal activities, *see Nadler v. Warner Co., supra; Commonwealth v. Trolene, supra; see also Matter of Walsh,* 623 F.2d 489 (7th Cir.1980); *In re Grand Jury Proceedings,* 604 F.2d 798 (3d Cir.1979); *In re Grand Jury Proceedings,* 551 F.2d 899 (2d Cir.1977); *McCormick, supra* § 95; Wigmore, *supra* § 2298, nor can the client have a legitimate expectation of such confidences.

Furthermore, to construe the confidential communications covered under 42 Pa.C.S. § 5916 to entail information of this nature would lead to the absurd result where a fugitive can effectively use the attorney-client privilege to defy a lawful court order. We are bound under the rules of our Statutory Construction Act to avoid such absurd results and to promote public policy. 1 Pa.C.S. § 1901. The following reasons also support this construction.

■ As stated earlier, the purpose for confidentiality is to assure the full and satisfactory maintenance of the relationship between the attorney and the client. It is thus limited to confidential communications and disclosures made by the client to his legal advisor for the purpose of obtaining his professional aid or advice. *See Slater v. Rimar, Inc., supra.* Here Aquino sought appellee's professional services to obtain legal representation to defend against sexual assault charges. The information relating to the initial charges for which the representation was sought and established is separate and distinct from the client's subsequent decision to flee the jurisdiction of the court. Appellee has at no point suggested that she is now representing Aquino for the possible future charges of being a fugitive. Moreover, an attempt to represent Aquino for this charge under these circumstances would amount to appellee becoming an accessory in Aquino's continuing criminal conduct. This is prohibited and clearly does not serve as the basis of an acceptable attorney-client relationship. Thus, in this case, it was the communications relating to the circumstances surrounding the sexual assault charges which were essential to the attorney-client relationship and not those communications relating to Aquino's unlawful decision to remove himself from the jurisdiction of the court during the pendency of those charges. As stated in *Brennan, supra,* "courts must balance the interests of the client against the potential harm to others." *Id.* 281 Pa.Super. at 379, 422 A.2d at 518.[12]

12. In *Brennan v. Brennan,* 281 Pa.Super. 362, 422 A.2d 510 (1980), an attorney in an underlying custody matter refused to disclose to the trial court and plaintiff/mother the whereabouts of his client, the defendant/husband and the children who were the subject of the custody proceeding. The Superior Court concluded that the attorney-client privilege had been properly invoked by the attorney. *Brennan,* however, is clearly distinguishable from the case *sub judice* in two significant respects: (1) *Brennan* was a civil case where the client/husband, unlike the client/Aquino here, was not under any process or in violation of any proper order; and (2) in the context of a custody proceeding the client/husband's and children's whereabouts was inextricably tied to the matter upon which the client sought the attorney's professional legal advice. As we discussed above, in the instant case the court's inquiry as to Aquino's whereabouts was

We note that inordinate delay was caused by appellee's client as the result of his evasive and obstructive conduct in failing to appear at his scheduled trial on April 7, 1983. We also recognize the disruption to the efficient administration of justice that accompanies such protracted delays. Problems that can typically result from such delays include: (1) the fading memories of witnesses, *e.g.*, the ten-year-old rape victim and her young brothers; (2) the future unavailability of witnesses; and (3) the loss or destruction of indispensible evidence.

Our analysis thus leads us to conclude that where a client is under conditions of bail and defies a lawful court order to appear, his "whereabouts" are not unqualifiedly protected by the attorney-client privilege, and the attorney may be compelled to disclose information of the client's whereabouts. Under the instant facts, the privilege cannot be maintained.

## B.

Having determined that the attorney-client privilege does not bar disclosure of the client's whereabouts in the instant case, we now address appellee's contention that the order of the trial court was overbroad. At issue is that portion of the order which directed appellee to "disclose any information she may have on how to locate the defendant Aquino." Under appellee's interpretation of the order, the Commonwealth could find out virtually anything it wanted to know about her client's case.[13] Both opinions of the

unrelated to the underlying rape prosecution and appellee is capable of rendering competent representation to her client notwithstanding the fact she must disclose his whereabouts for purposes of proceeding with the trial.

**13.** Appellee stated in her brief:

In the case at bar it is not hard to imagine the kind of information that the prosecution might have sought which could have helped to locate the client. Information routinely obtained from a criminal defendant in an interview with counsel includes names and addresses of the client's present and prior employers; the client's account of the facts which gave rise to the charges, including defenses to the charges; other attorneys who represented the client; the names and

Superior Court also envisioned the worst possible scenario and concluded that the order would sanction the prosecution's access to information and material which is absolutely privileged.[14] While we believe the Superior Court has raised a legitimate concern that in such instances the Commonwealth could attempt to engage in a fishing expedition, we believe that the hypotheticals expressed in no way relate to the facts presently before us. It is clear from the record of this case that the court was only interested in ascertain-

> addresses of people supporting the client; the person or people he is living with; names and addresses of his spouse, his children, his parents, his siblings; hospitals and other institutions where he has received or might currently be receiving treatment; names and addresses of friends who might be contacted with bail or other assistance; names and addresses of witnesses to his arrest, alibi witnesses, character witnesses, and material witnesses. Most of this information is not discoverable under Rule 305C Pa.R.Crim.P. The District Attorney should not be permitted access to it at an interrogation of defense counsel conducted for the ostensible purpose of initiating or assisting a search for her client.
> Appellee's Brief at 11–12.

**14.** Judge Spaeth wrote on this point:
> This order is not, as the Commonwealth characterizes it, "carefully circumscribed." To the contrary, it is general in the extreme, leaving undefined whatever limits there may be on the questions that the Commonwealth may ask appellant. Suppose, for example, that Aquino at some point [could have told] appellant as his attorney that A, B, and C were witnesses to the crime, or otherwise knew something that appell[ee] should look into as relevant to his defense. Under the trial court's order would appell[ee] have to disclose the identity and whereabouts of A, B, and C? It is clear that she would. For if A, B, and C knew about the crime, they may also know where Aquino is. If an attorney doesn't know where her client is, a good way to start looking for him is to ask his friends if they know where he is. Thus, appellant's knowledge regarding A, B, and C would be "information [that she had] on how to locate the defendant Aquino...."
> *Commonwealth v. Maguigan,* 323 Pa.Super 317, 331–32, 470 A.2d 611, 618 (1983).

Judge Montemuro was also unequivocal in finding the order to be manifestly and "indisputably" overbroad:
> Without question, this court will not sanction any fishing expeditions by the Commonwealth into facts in the possession of defense counsel which may or may not be within the attorney-client privilege.... Such an order is clearly overbroad and sanctions the prosecution's access to information and material which is absolutely privileged.
> *Id.,* 323 Pa.Superior Ct. at 353–54, 470 A.2d at 629.

ing the whereabouts of Aquino. The questions posed by the trial court were strictly limited to the address, phone number and whereabouts of appellee's client. The questions neither required nor sought names of other individuals who may have served as the source of appellee's information. The trial court's probe was thus restricted to the factual information appellee could personally testify to concerning the whereabouts of Aquino, and did not entail a search of Aquino's file. Such limited inquiry is distinguishable from inquiries concerning how or from whom appellee obtained the information or questions with respect to motives or explanations concerning the origin of the information. Those questions could lead to the disclosure of confidential communications and we caution against any orders to that effect. However, we find no such circumstances to exist within the limited context pursued by the trial judge in this case. Additionally, any conceivable overbreadth of the Court of Common Pleas can be cured by *in camera* questioning of appellee that is limited to determining whether she has any information concerning the whereabouts of Aquino.

Accordingly, the order of the Superior Court is reversed and we reinstate the order of contempt issued by the Court of Common Pleas requiring appellee to disclose information concerning the whereabouts of her client.

ZAPPALA, J., concurs in the result.

PAPADAKOS, J., files a dissenting opinion in which FLAHERTY, J., joins.

PAPADAKOS, Justice, dissenting.

I must dissent. In this appeal by the Commonwealth (Appellant), it continues in its attempt to compel Holly Maguigan, Appellee, to respond to its speculative inquiries concerning the whereabouts of her client who failed to appear for a scheduled trial three years ago.

Appellee is an attorney who represented Carlos Aquino on charges of rape, statutory rape, corrupting the morals of a minor, indecent assault, and indecent exposure.

On April 7, 1983, Aquino did not appear for his trial on these charges. Later that day, the Commonwealth filed a Motion to Compel Appellee to disclose the address and telephone number of her client and an on-the-record presentation of that motion was made before Judge Anderson, Program Calendar Judge.

The motion was presented for the Commonwealth by Suzanne McDonough, Esquire, an Assistant District Attorney, who had worked on Mr. Aquino's prosecution and prepared the case for trial. Appellee appeared for the motion presentation, represented by David J. Rudovsky, Esquire. In explaining the necessity for presenting a Motion to Compel, Ms. McDonough gave the court extensive background information concerning the difficulty in keeping tract of the whereabouts of Mr. Aquino since his last court appearance on January 19, 1983. At that time, he appeared in court for the presentation of a Motion to Compel a Bill of Particulars.

By February 9, 1983, a Federal warrant for arrest had been issued by the Federal District Court because Mr. Aquino could not be located at the address Mr. Aquino had given when his bond was posted. Appellee was notified that a warrant had been obtained against her client and although she *stated that she did not know where Mr. Aquino was,* she did attempt to locate him through Mr. Gerardo Tempkin, the owner of the property Mr. Aquino was supposed to be living at. This property turned out to be a used car dealership and it was unlikely that Mr. Aquino ever lived there.

Ms. McDonough next apprised Judge Anderson of the F.B.I.'s efforts in intercepting phone calls with Mr. Aquino's brother which placed his whereabouts at his brother's home until March 15, 1983, and that Appellee received a phone call on February 23, 1983, from someone who charged the call to Mr. Aquino's brother's phone number.

Finally, Ms. McDonough advised the trial court of her primary concern:

> The problem here is that Ms. Maguigan two weeks ago told me outside the courtroom in City Hall that despite the fact that I had several conversations with her regarding the Defendant's whereabouts being completely unknown, that she was ready to try the case and the Defendant would be present and when I asked, Where is he; do you know, she said, I can't tell you that. As a result of that I brought in this little girl who was raped repeatedly when she was ten years old and two little brothers and prepped them for five hours yesterday to have them ready to testify on the representation that she would be ready to go to trial in this case today.
>
> Those kids have gone through living hell. We come in here today and I ask Ms. Maguigan where her client is, if he is going to show up and she said she didn't know. I asked her if she would let the Court know where he was and she told me she could not tell me and your Honor heard her tell the Court that she refused to tell the Court what information she had on him.
>
> Now, if the bail bond means nothing and an attorney is allowed to hide the Defendant or hide information with regard to a Defendant who has sworn to the Court that he would appear, that he would always give us his address and then hide behind an attorney who knows where he is, then it isn't a very good system of justice at all and we ask, based on that case which sets out the general law in Pennsylvania that normally if the administration of justice will not be hampered, then an attorney does not have to disclose the whereabouts, the current whereabouts of their client, but when the administration of justice will be hampered, that it's a duty for defense attorney to disclose and I also suggest that in the issue of bail when a Defendant tells the Court in submitting to the Court's orders that he will always provide his current address, he can't then say that when he changes his address and communicates it to his attorney that it is

privileged and the Court should not know about it.[1] (pp. 56a–58a).

During the presentation of the motion, Judge Anderson requested Appellee to disclose the requested information (pp. 65–66a of the Record) and following arguments, Judge Anderson gave the Commonwealth and Appellee the right to submit briefs on whether an attorney can be ordered to disclose the address and phone number of a client who does not appear for his criminal trial, in violation of his bail. A second argument was scheduled for April 13, 1983. At that argument, the following discussion occurred between the Court and Appellee's attorney, Mr. Rudovsky:

THE COURT: Counsellor, it seems to me to avoid engaging in a fruitless exercise whether Ms. Maguigan knows the whereabouts of the Defendant—

MR. RUDOVSKY: You have just asked the question of whether Ms. Maguigan knows the whereabouts of the Defendant. This is slightly different than, materially different than the question that was posed at the hearing last week, does she know the address and phone number of Defendant.

THE COURT: Essentially, that's what I want to know.

MR. RUDOVSKY: I can address that. She does not know the address and phone number of the Defendant.

At a later point, Appellee's counsel informed the Court:

1. I note that usually transcripts present themselves as cold, lifeless, and sterile versions of what transpires before a trial court and often it is difficult for an appellate tribunal to appreciate the emotionally charged atmosphere which serves as a backdrop for the events which unfold before a trial judge. That is not the case here, however. Ms. McDonough's impassioned narrative of Mr. Aquino's elusive actions springs to life from the record and gives the reader a very clear idea that Ms. McDonough had spent a considerable amount of time in preparing this case and in keeping track of him and that his uncooperative elusiveness had worn thin her patience. In short, the Assistant District Attorney's fervor reeked of prosecutorial frustration in bringing this case to trial and in desperation, the prosecutor turned with full force to the only person left, Appellee. In my opinion, the prosecution's persecution of Appellee for information concerning her client's whereabouts went far beyond permissible limits.

... I can represent to the Court that during the course of what we consider to be an attorney-client conversation, as a result of that conversation, [appellee] has some general information about the possible whereabouts of the Defendant, and I put it that way because there is a difference between that and the address issue.

Based on this representation, the Court ordered Appellee to disclose the whereabouts of her client and when Appellee refused to do so, after already informing the Court that she did not know Mr. Aquino's address or phone number, the Court found Appellee in contempt, imposing a $100.00 per day fine until Appellee purged herself of the contempt.

Appellee filed an appeal to Superior Court from that order arguing, among other things, that:

1) the trial court lacked jurisdiction over her to give testimony concerning her client's whereabouts;

2) that the requested information was protected by the attorney-client privilege; and

3) any disclosures would not protect her rights of self-incrimination under the Fifth Amendment.

Prior to argument, the Commonwealth petitioned Superior Court to remand this matter to the Court of Common Pleas for the purpose of granting immunity to Appellee. Judge Spaeth, former President Judge of the Superior Court, granted the Commonwealth's petition remanding this matter back to the trial court to consider the propriety of using the Immunity Act, 42 Pa.C.S. § 5947, et seq.,[2] to compel Appellee to disclose information that could be privileged under the attorney-client privilege.

Pursuant to Judge Spaeth's Order, the trial court held a hearing on June 27, 1983, where it found that immunity was proper in this case and, thereupon, ordered Appellee to divulge her knowledge concerning the whereabouts of her client and how to locate him. Appellee steadfastly continued to refuse to answer the court's questions, replying that any such information was privileged. The court again

2. Act of April 28, 1978, P.L. 202, No. 53, § 10(78), as amended, et. seq.

found Appellee in contempt of its order and again fined her $100.00 per day until she purged herself of the contempt.

Another appeal to Superior Court followed on June 28, 1983, and that Court, by its Opinion and Order of December 30, 1983 (by Judge Spaeth), reversed the order of the trial court, finding that its inquiry of Appellee was too broad, forcing her to divulge protected client information. Superior Court did not decide whether the trial court acted properly in granting the immunity petition or whether the use of the Immunity Act was a proper procedure, simply assuming that the trial court had jurisdiction, *Commonwealth v. Maguigan*, 323 Pa.Superior Ct. 317, at 327, 470 A.2d 611, at 616 (1983). Because this case raised important questions concerning the parameters of the attorney-client privilege and the use of an immunity petition to compel an attorney to testify against her client, allocatur was granted.

Appellant argues that an attorney can be granted immunity to divulge any information as to the whereabouts of a client who does not appear for his criminal trial and that Superior Court erred in concluding that the trial court's questioning of Appellee was too broad. I disagree with the Commonwealth, the Majority, and with Superior Court's disposition of this matter.

There is no question that an attorney cannot be forced to divulge information learned from his client while acting as his attorney. The attorney-client privilege is one of the greatest protections known to our legal system and its evolution from the 17th Century bears witness to our continual confidence in the concept that attorney-client communications can be trustworthy and open only when a client is confident that his conversations to his attorney will not be divulged without his knowledge or consent.[3]

3. The strength and vitality of the privilege in our law is exemplified by the many statutes and judicial decisions throughout our country embracing the privilege. *Heister v. Davis,* 3 Yeates 4 (1800); *Moore v. Bray,* 10 Pa. 519 (1849); *Goddard v. Gardner,* 28 Conn. 1972 (1859); *Andrews v. Simms,* 33 Ark. 771 (1878); *Alexander v. United States,* 138 U.S. 353, 11 S.Ct. 350, 34 L.Ed. 954 (1890); *Carter v. West,* 93 Ky. 211, 19 S.W. 592 (1892); *Liggett v. Glenn,* 51 Fed. 381, 4 U.S.App. 438

Our Legislature has codified the privilege as applied to criminal cases in the Act of July 9, 1976, P.L.1976, 586, No. 142, § 2, 42 Pa.C.S. § 5916, which provides in pertinent part:

In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

In *Estate of Kofsky*, 487 Pa. 473, 409 A.2d 1358 (1980), the Court stated that the attorney-client privilege is grounded in a policy entirely extrinsic to protection of the fact-finding process; its purpose is to foster a confidence between client and advocate that will lead to a trusting and open attorney-client dialogue. See also, *Alexander v. Queen*, 253 Pa. 195, 97 A. 1063 (1916).

As a consequence, damage to the administration of justice occurs when the sanctity of the confidence is violated improvidently, not when the evidence is given substantive consideration, *Kofsky*.

Furthermore, each attorney is guided by the canons and ethical considerations of the Code of Professional Responsibility when representing his client. Canon 4 of the Code of Professional Responsibility imposes an obligation upon an attorney to preserve the confidences and secrets of his client, for reasons explained in ethical consideration 4-1 of the Code, as follows:

Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ

(1892); *Stone v. Minter,* 111 Ga. 45, 36 S.E. 321 (1900); *In re: Young's Estate,* 33 Utah 382, 94 P. 731 (1908); *Carney v. United Rys. Co. of St. Louis,* 205 Mo.App. 495, 226 S.W. 308 (1920); *Ex Parte Schneider,* 294 S.W. 736 (1927); *In re: Heile,* 29 N.E.2d 175, 65 Ohio App. 45 (1939); *Schmitt v. Emery,* 211 Minn. 547, 2 N.W.2d 413 (1942); *McCaslin v. Willis,* 197 Miss. 366, 19 So.2d 751 (1944); *Lietz v. Primock,* 84 Ariz. 273, 327 P.2d 288 (1958); *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960); N.J.S.A. 2A:84A-20, V.A.M.S. § 491.060, 5 Okl.St.Ann § 3, S.D. C.L. 19-13-2, et. seq., T.C.A. 23-3-105.

him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance. Ethical Consideration 4–1, Code of Professional Responsibility.

There is, however, nothing confidential or secretive in the address or phone number of a client. This information is not within the attorney-client privilege, and can be the subject of a court inquiry, *Wigmore on Evidence*, § 2298 (3rd Ed.) 1940. Disclosure of a client's address or phone number is severable from other communications to an attorney, which are privileged. Disclosure can be accomplished with a simple question by the Court, "What is your client's address and phone number?" This question can be directly responded to without the divulging of other communications, which may be confidential.

The majority makes much of the fact that Appellees' client was in violation of his bail agreement which obligated her *client* to keep the court informed of his address at all times and imputes this requirement on to Appellee as well. Because I do not find Appellee to act as her client's surety, I do not believe she should be subjected to a disgruntled District Attorney's barage of questions that "might" provide a lead as to the client's whereabouts. The majority's contrary conclusion does not serve as an aid to find a fugitive from justice. Rather, it only will expose an attorney to vague, speculative inquiries and, in reality, will place the attorney in a position to be harassed by a court and a

district attorney because his client did not appear at a hearing.

The uselessness of the Majority's directions is readily apparent by its mandate in this case. The Majority concludes that the trial court's inquiries were not overbroad and now remands, after a three year hiatus, to subject the attorney to give stale information concerning where her client was three years ago, or in the interim, although I find it highly unlikely that she would have kept tabs on him knowing the consequences.

More basically, I am concerned by the Majority's analysis of the court's right to conduct a broad inquiry because it implies that our defense counsel are not truthful when asked direct questions by the court. For our system of justice to function, we must assume that attorneys practicing before us will answer questions honestly and truthfully. The majority's analysis seems to operate from a contrary premise and, for that reason, I dissent.

In the case *sub judice*, the record reveals that the trial court, on April 7, 1983, limited its inquiry to the address and phone number of Mr. Aquino. At the April 13, 1983, argument, the inquiry was the same, to which Appellee, through her counsel, stated that she did not know the address or phone number of her client (p. 76a). *At this point the inquiry should have ceased* for, in my view, any other questions became too broad. Instead, a two year odyssey in creative procedure-making began buffeting Appellee between the trial court and Superior Court with the Commonwealth at the helm, trying to chart a new course in prying information out of attorneys in direct contravention of the time-honored protection granted by the attorney-client privilege. What is more disappointing is that the Majority now puts its imprimatur on the Commonwealth's tactics and, from that action, I dissent.

When Appellee was found in contempt of the trial court's order to divulge information on April 7 and April 13, 1983, an appeal was taken to Superior Court. Instead of reaching the merits of the appeal, Superior Court, per Judge Spaeth,

vacated the trial court's order and remanded the matter back to the trial court to consider the Commonwealth's immunity petition. This, in my view, was error.

A review of the record would have revealed that Appellee had already answered the only legitimate inquiry concerning Mr. Aquino's whereabouts (address and phone number). Since Appellee had divulged that she did not know her client's address or phone number, there was nothing else the court could legitimately ask her without compromising the attorney-client privilege. Accordingly, a remand was improper, especially to grant her immunity. Since she had answered the only question she could be asked, what usefulness would there be in granting her immunity? Even clothed with immunity, what else could she answer without violating her *client's* right to have privileged information remain unrepeated?

My concern is that no one can test the veracity of her compelled answers. Would the logical answer be to compel Appellee to open her files for inspection by the Court and the District Attorney? Again, no direction is provided by the Majority and I believe a trial court order that seeks to compel more than an address and phone number is inherently overbroad.

Moreover, had Appellee *not* answered the permissible questions of the trial court, an immunity petition would still not be the proper remedy, since a simple remand with directions to the trial court could have informed all involved as to what information could or could not be divulged.

Under any circumstances, however, in my opinion, an immunity petition was an inappropriate vehicle for the Commonwealth to use or Judge Spaeth to entertain, under these circumstances, and, in this respect, I also dissent from the Majority. The Immunity Act extends to *witnesses* appearing in proceedings as defined by the Act, 42 Pa.C.S. § 5947(a).[4] An attorney, in his representative capacity of

---

**4.** 42 Pa.C.S. § 5947(a) provides:
 Immunity orders shall be available under this section in all proceedings before:

counsel for his client, is not a witness. He is an officer of the court, and as such, submits himself to the jurisdiction of the court when he appears for his client before our tribunals. This jurisdiction extends to the court's right to ask an attorney the address and phone number of his client. It does not extend to broader inquiries concerning a client's whereabouts because such inquiries may expose information which is privileged. Most importantly, it must be remembered that under these circumstances, an attorney, acting for his client, remains just that, an attorney. The questioning by the court does not transform the attorney into a witness. Accordingly, the Immunity Act is inapplicable in these circumstances since the attorney is not appearing before the court as a witness.

The record reveals that the Commonwealth's remand and immunity petition request was presented to Judge Spaeth, *in camera,* and after arguments, was granted by him.[5] The trial court's order of April 13, 1983, was also vacated by Judge Spaeth and the matter remanded to the trial court.

It does not appear that a panel considered the propriety of remanding the matter to the trial court when it was first remanded by Judge Spaeth on May 13, 1983, or in the

1) Courts
2) Grand Juries
3) Investigating grand juries
4) The minor judiciary and coroners.

5. Text of Record, pp. 86a–87a:
A hearing (sic) was held before Judge Spaeth the following week. At that point, contrary to the position that was taken here today and, in fact, taken on the 13th, the District Attorney conceded that there was a legitimate Fifth Amendment issue. This was after Judge Spaeth said there was substantial merit to all the claims that were raised and that he would issue a stay of the Court's Order. Because they recognize the validity of the Fifth Amendment claim, that is they, the Commonwealth, petitioned Superior Court for a remand to ask this Court to grant immunity. We argued at that point and we said to Judge Spaeth that there was no jurisdiction in this Court to grant immunity and that's why Judge Spaeth ordered a hearing on the immunity applications that normally come before your Honor, that is ex parte. We thought that there was significance to the issue of jurisdiction and, therefore, before immunity could be imposed in this case, he thought a hearing was necessary.

subsequent appeal by Appellee. Additionally, the propriety of the contempt order of April 13, 1983, has never been reviewed by Superior Court which limited its review in the second appeal to the June 27, 1983, immunity hearing. I find this futile procedure totally improper and would conclude that the second contempt to have been a nullity.

From my review of the April 7 and April 13, 1983, hearings and arguments before the trial court, it is clear that Appellee answered that she did not know her client's address or phone number. In my view, this was all she was required to answer and any other questions were improper intrusions into privileged areas. Consequently, the trial court's finding of contempt at the conclusion of the April 13, 1983, argument was improper and should be reversed.

The majority stresses that Appellee admitted knowing for one month prior to April 7, 1983, that Aquino would not appear for trial (slip opinion, p. 21) and that her exercise of the attorney-client privilege frustrates the interests of the administration of justice. The Majority finds this to be a sufficient basis upon which to compel Appellee to respond to the general questions regarding her client's whereabouts.

Unfortunately, this is a misstatement of the facts appearing in the copy of the record furnished me. At page 10, transcript of the proceedings before the Honorable Levy Anderson, April 7, 1983, on the Commonwealth's Motion to Compel defense counsel to disclose the address and telephone number of the defendant, the following statement of Mr. Rachofsky (sic), Counsel for Appellee, is made in response to a statement made by Suzanne McDonough, Assistant District Attorney:

> Without agreeing to the factual representations just made, I was going, at one point, based on what the Court said, to give up this Fifth Amendment argument. I will not give it up now given the representation just made that my client, Ms. Maguigan, has known for a month that her client, Mr. Aquino, would not appear for trial...."

Clearly, the assertion of Ms. Maguigan's purported knowledge for a month before the trial date was made by Ms. McDonough and is not an admission by Ms. Maguigan or her counsel.

Had Ms. Maguigan harbored such knowledge that her client would not show up for trial and still forced the Commonwealth into full preparedness for trial, thus wasting everyone's time and patience, I, too, would agree that sanctions should be imposed on Ms. Maguigan. But the question of sanctions is not before us. The question of the attorney-client privilege is. To destroy this privilege by reliance upon non-existent facts is unconscionable.

Furthermore, the Majority states at page 24, slip opinion: Although it is possible under a particular situation that information of the whereabouts of a defendant could be so inextricably intertwined with the underlying charges for which representation was sought that a disclosure of that information would be protected by the privilege, *the facts of this case do not present such a situation.* (Emphasis added.)

How can the Majority possibly know what situation is presented by the facts of this case which are *unrevealed* and remain within the protection of the attorney-client privilege? The Majority today declares that the fishing expedition by the Commonwealth is now sanctioned, whether the disclosures are made in open court or *in camera,* and the judge will now decide what is privileged information and what is not. So much for an attorney's honor and fidelity! Sweet dreams to sanctity of confidences between attorney and client! The uprooting of the most revered of our common law privileges has now begun with tornado force. I view the future of the attorney-client privilege with grim forebodings. Judge Spaeth's expressed fears are rationally related to the compelled disclosure of all facts within defense counsel's knowledge which could possibly aid in discovering the "whereabouts" of a missing defendant. What is more natural than the follow-up question: "Give us the names and addresses of all persons within your knowledge

who might conceivably know of the 'whereabouts' of the missing defendant."

I concur in Judge Montemuro's finding that the order compelling the disclosure of information leading to the "whereabouts" of the defendant is manifestly and "indisputably" overbroad and sanctions the Commonwealth's access to information which is absolutely privileged.

I would affirm Superior Court.

FLAHERTY, J., joins in this opinion.